UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

07 CIV 5594

CASTLE STRATEGIC TRADING , LLC,
individually and on behalf of all others
similarly situated,

　　　　　　　　　Plaintiffs,

　　　　v.

J. ROGER MOYER, JR., THOMAS DAUTRICH,
GEORGE W. GRANER, EQUIPMENT
FINANCE, LLC, and BANK OF LANCASTER,
N.A.

　　　　　　　　　Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. _____

CLASS ACTION COMPLAINT
FOR VIOLATION OF
FEDERAL SECURITIES LAWS

Jury Trial Demanded



Plaintiff, by its counsel, for its complaint allege upon personal knowledge as to themselves and their own acts and upon information and belief as to all other matters, based upon an investigation by their counsel that included a review of publicly filed court documents and news releases of Sterling Financial Corporation–Lancaster, PA ("Sterling" or the "Company"), and, a review of relevant public filings made by Sterling with the Securities and Exchange Commission (the "SEC").

## NATURE OF THE ACTION

1.　　This is a class action brought on behalf of those persons (the "Class") who acquired common stock of Sterling during the period from April 27, 2004 through May 24, 2007 (the "Class Period"). Plaintiff alleges violations against Defendants of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rules 10b-5(a) and (c) promulgated thereunder and of Section 20(a) of the Exchange Act.

2.     During the Class Period, Defendant Equipment Finance, LLC ("EFI"), a wholly owned subsidiary of defendant Bank of Lancaster County, N.A. ("Bank of Lancaster"), and certain of its senior officers and directors employed devices, schemes, and artifices to defraud Plaintiff and other purchasers of Sterling shares during the Class Period by knowingly and/or recklessly providing materially false and misleading financial information regarding EFI to persons responsible for the financial reporting for Sterling for the purpose of artificially inflating Sterling's stock price. These Defendants participated in the scheme alleged herein, with the knowing or reckless disregard that the scheme would cause Sterling to issue materially false and misleading financial statements.

3.     As a result of the scheme to defraud alleged herein, Sterling was forced to announce that its previously issued financial statements for fiscal years ("FY") ended 2004 through 2006, and interim periods therein, could no longer be relied upon. On May 24, 2007 investors first learned about the scheme, when Sterling announced in a press release and conference call with investors, that it had, allegedly through its ongoing investigation, uncovered a major fraud at EFI, which included irregularities in certain financing contracts EFI entered into, that EFI and certain of EFI's officers and directors had subverted internal controls, concealed credit delinquencies and had falsified financing contracts and related documents. As a result, Sterling announced that it had, at that time, terminated five employees of EFI, including the EFI's Chief Operating Officer and Executive Vice President.

4.     The impact on Sterling's stock was immediate and drastic. On May 24, 2007 Sterling announced that it had preliminarily determined that it would record an after tax charge to its FY 2006 of approximately $145 million to $165 million. Sterling also announced that it was halting its dividend. This partial disclosure of the scheme caused the Company's stock to

fall over nearly 40%. Prior to May 24, 2007, the then undisclosed scheme partially materialized in an April 30, 2007 announcement by the Company which caused Sterling's stock to fall 19%.

## JURISDICTION AND VENUE

5.    This action arises under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78j(b) and 78t, and Rules 10b-5(a) and (c), 17 C.F.R. §240.10b-5 promulgated thereunder.

6.    The Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1331.

7.    Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b). Upon information and belief a plurality of the investors in Sterling are located in this district. Moreover, Sterling's common stock is listed on the Nasdaq exchange which is located in this District.

8.    In connection with the acts, transactions and conduct alleged herein, Defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the United States mails, interstate telephone communications and the facilities of national securities exchanges and markets.

## CLASS ACTION ALLEGATIONS

9.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of the Class defined above. Excluded from the Class are Defendants, members of the immediate family of each of the Controlling Defendants, as defined below, EFI, Sterling, Bank of Lancaster, any subsidiary or affiliate of Sterling or any of their subsidiaries or affiliates, or any entity in which any excluded person has a controlling interest, as well as the legal representatives, heirs, successors and assigns of any excluded person.

3

10.    While the exact number of Class members is unknown and can only be ascertained through appropriate discovery, Plaintiff believes there are hundred if not thousands of class members. Accordingly, joinder of all Class members is impracticable. Furthermore, because the damages suffered by the individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for the Class members individually to redress the wrongs done to them.

11.    Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members. Among the questions of law and fact common to the Class are:

a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

b)    whether the Controlling Defendants are "control persons" within the meaning of the federal securities laws;

c)    whether EFI and Graner employed devices, schemes and artifices to defraud Plaintiff and other investors of Sterling by knowingly or recklessly providing materially false and misleading financial information concerning EFI to persons responsible for the financial reporting for Sterling with knowledge or reckless disregard that such a scheme would cause Sterling to issue materially false and misleading financial statements;

d)    whether the market prices of Sterling securities during the Class Period were artificially inflated as a result of the conduct alleged in this complaint; and

e)    whether Plaintiff and the other members of the Class have sustained damages and, if so, the proper measure of those damages.

12.    Plaintiff's claims are typical of the claims of other Class members. Plaintiff and the other Class members sustained damages arising out of Defendants' wrongful conduct.

13.    Plaintiff will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class actions and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

4

14.    Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

15.    The names and addresses of purchasers of Sterling stock are available from Sterling's transfer agent. Notice can be provided to such record owners via first class mail using technique and form of notice similar to those customarily used in class actions.

## THE PARTIES

16.    Plaintiff Castle Strategic Trading, LLC purchased shares of Sterling during the Class Period and was damaged thereby. Its certification is attached to the Complaint.

17.    Defendant EFI is a Pennsylvania limited liability corporation. According to Sterling's Annual Report for FY 2006, EFI specializes in financing forestry and land-clearing equipment for the soft wood chip business utilized primarily in the paper industry through more than 150 equipment dealer locations ranging from Maine to Florida. For FY 2006, 2005, and 2004 EFI accounted for 41%, 38% and 36% of Sterling's net operating income from continuing operations. EFI is a wholly owned subsidiary of the Bank of Lancaster. EFI's principal office address, listed with the Pennsylvania Department of State is the same as Sterling's: 101 N. Pointe Blvd., Lancaster, PA 17601. At all relevant times, EFI was part of Sterling's "Financial Services Group."

18.    Defendant Bank of Lancaster, is a wholly owned subsidiary of Sterling. Bank of Lancaster is a National Banking Association. In an attachment to Sterling's Form 10-K, filed with the SEC on March 16, 2007, Sterling lists Bank of Lancaster's address as: 1 East Main Street, P.O. Box 0300, Strasburg, PA 17579. During the Class Period, Sterling conducted its community banking and related services through Bank of Lancaster. During the Class Period, Bank of Lancaster was a controlling entity of EFI within the meaning of Section 20(a) of the Exchange Act.

5

19.    Non-party Sterling is a Pennsylvania financial holding company headquartered in Lancaster, PA. Sterling provides a full range of banking and financial services to individuals and businesses through the following business segments: Community Banking and Related Services; Leasing; Commercial Finance; and Trust and Investment Services. Sterling's common stock is listed on the Nasdaq under the ticker "SLFI."

20.    Defendant George W. Graner ("Graner") prior to his announced departure from EFI on or about April 30, 2007, served at all relevant times herein as President, Chief Executive Officer and Manager of EFI.

21.    Defendant J. Roger Moyer, Jr. ("Moyer") serves on Sterling's Board of Managers and/or on the Board of Directors of EFI, since 2003. Moyer is also the President and CEO of Sterling since May 2002. Moyer is also Senior Executive Vice President of Bank of the Lancaster since 2000 and a director thereof since 1994.

22.    Defendant Thomas Dautrich ("Dautrich"), according to the Company's Proxy Statement filed with the SEC on March 29, 2006, served on Sterling's Board of Managers and/or on the Board of Directors of EFI, since 2002. The Proxy Statement also stated that Dautrich was appointed Senior Executive Vice President and Chief Banking Officer of Sterling in January 2002. According to Sterling's Proxy Statement filed with the SEC on May 3, 2005, Dautrich was the CEO and Vice Chairman of the Bank of Lancaster since April 2004, and President and CEO of the same from April 2002 until April 2004.

23.    Moyer, Graner, Dautrich, and Bank of Lancaster, are referred to herein as the "Controlling Defendants." Because of the Controlling Defendants' positions with Sterling and EFI, they had access to the adverse undisclosed information about the EFI's business, operations, subsidiaries, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attorneys, attendance at management and Board of

6

Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

24.    It is appropriate to treat the Controlling Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed by EFI to persons responsible for Sterling's financial reporting as alleged herein are the collective actions of the narrowly defined group of Defendants identified above.  Each of the above Controlling Defendants of EFI, by virtue of their high-level positions with EFI and Sterling, directly participated in the management of the EFI, was directly involved in the day-to-day operations of the EFI at the highest levels and were privy to confidential proprietary information concerning the EFI and its business and operations as alleged herein.  Said Defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged to have been provided to persons involved in the financial reporting for Sterling that caused Sterling to issue materially false and misleading financial statements to the investing public—done so knowingly or in reckless disregard for the truth, in violation of the federal securities laws.

## THE MATERIALLY FALSE AND MISLEADING STATEMENTS

25.    The Class Period begins on April 27, 2004 when Sterling issued a materially false and misleading press release announcing its Q1 2004 ended March 31, 2004 results.  The press release states, in relevant part:

7

Sterling Financial Announces 15.2% Increase in First Quarter Earnings

LANCASTER, PA — Sterling Financial Corporation (SLFI) announced earnings for the quarter ending March 31, 2004.

Results of Operations

Sterling's net income was $7.629 million for the quarter ended March 31, 2004, an increase of $1.004 million, or 15.2% from the first quarter 2003. Diluted earnings per share totaled $0.35 for the first quarter 2004 versus $0.31 for the same period 2003, an increase of 12.9%. Return on average realized equity for the first quarter of 2004 was 14.78%, compared to 14.52% in the first quarter of 2003.

*    *    *    *

"Coming off an outstanding year in 2003, it is encouraging to begin 2004 with such rock-solid performance," said J. Roger Moyer, President and Chief Executive Officer of Sterling Financial Corporation. "Market conditions in the first quarter provided challenges, but Sterling continued our trend of improving on virtually every aspect of our business. The sustained performance of Sterling reflects the dedication and commitment of our people, who focus intently on meeting the needs of our customers and our shareholders."

26.    On May 10, 2004, Sterling filed its Q1 2004 report on Form 10-Q with the SEC reiterating and repeating the information in the Company's April 27, 2004 press release. The Form 10-Q was signed and separately certified by Defendant Moyer pursuant to Sections 302 & 906 of the Sarbanes-Oxley Act of 2002 ("SOX").

27.    On July 27, 2004 Sterling issued a materially false and misleading press release announcing "record earnings" for Q2, ended June 30, 200 results. The press release states in relevant part:

Sterling Financial Announces Record Earnings

LANCASTER, PA — Sterling Financial Corporation (Nasdaq:SLFI) announced record earnings for the quarter and six months ended June 30, 2004.

8

Results of Operations

Quarter Ended June 30, 2004

Sterling's net income was $8.126 million for the quarter ended June 30, 2004, an increase of $1.272 million, or 18.3%, from the second quarter of 2003. Diluted earnings per share totaled $0.37 for the second quarter 2004 versus $0.33 for the same period in 2003, an increase of 12.1%. Return on average realized equity for the second quarter of 2004 was 15.40%, compared to 14.79% in 2003.

\*    \*    \*    \*

Six Months Ended June 30, 2004

Sterling's net income was $15.845 million for the six months ended June 30, 2004, an increase of $2.276 million, or 16.8%, over the same period in 2003. Diluted earnings per share totaled $0.72 for the six months ended June 30, 2004, versus $0.64 in 2003, an increase of 12.5%. Return on average realized equity for the first half of 2004 was 15.10%, compared to 14.67% in 2003.

\*    \*    \*    \*

J. Roger Moyer, Jr., President and Chief Executive Officer of Sterling Financial Corporation, commenting on 2004's results stated, "We continue to be pleased with our strategy of offering a diversified array of financial service products to our customers that can be seen in our 2004 results. For the quarter ended June 30, 2004, non-interest income increased 17.9% over 2003's results. The results of our newest fee-based affiliates, including StoudtAdvisors, Church Capital Management, and Bainbridge Securities, have contributed greatly to our revenue stream. Net interest income has also increased 12.0%, as our specialty and commercial lenders are generating nice volume growth as well."

Moyer further added, "While we have been diversifying our financial services product offerings, we have also been focused on the expansion of our banking activities. Our emerging markets, including Berks County, Pennsylvania, Carroll County, Maryland, and New Castle County, Delaware, also continue to reap the benefit of market disruption, and have contributed to our asset growth. We are very excited about our newest emerging market, Pennsylvania's Capital Region, with our announced agreement with The Pennsylvania State Banking Company. 2004 has been very exciting for Sterling's employees and shareholders, and we look forward to continuing this momentum."

28.   On August 9, 2004 Sterling filed its Q2 2004 report on Form 10-Q with the SEC reiterating and repeating the information in the company's July 27, 2004 press release. The Form 10-Q was signed and separately certified by Defendant Moyer pursuant to Sections 302 & 906 of the Sarbanes-Oxley Act ("SOX").

29.   On October 26, 2004 Sterling issued a materially false and misleading press release announcing "record earnings" for Q3, ended September 30, 2004 results. The press release states in relevant part:

Sterling Financial Announces Record Earnings

LANCASTER, PA — Sterling Financial Corporation (Nasdaq:SLFI) announced record earnings for the quarter and nine months ended September 30, 2004.

Results of Operations

Quarter Ended September 30, 2004

Sterling's net income was $8.500 million for the quarter ended September 30, 2004, an increase of $1.003 million, or 13.4%, from the third quarter of 2003. Diluted earnings per share totaled $0.38 for the third quarter 2004 versus $0.35 for the same period in 2003, an increase of 8.6%. Return on average realized equity for the third quarter of 2004 was 15.01%, compared to 15.40% in 2003.

\*   \*   \*   \*

Nine Months Ended September 30, 2004

Sterling's net income was $24.345 million for the nine months ended September 30, 2004, an increase of $3.279 million, or 15.6%, over the same period in 2003. Diluted earnings per share totaled $1.11 for the nine months ended September 30, 2004, versus $0.99 in 2003, an increase of 12.1%. Return on average realized equity for the first nine months of 2004 was 15.07%, compared to 14.92% in 2003.

\*   \*   \*   \*

J. Roger Moyer, Jr., President and Chief Executive Officer of Sterling Financial Corporation, reflecting on 2004's results stated, "2004 has been an interesting year for Sterling Financial Corporation, as it feels like two

distinct initiatives have been running simultaneously. The task of documenting our compliance with Section 404 of Sarbanes-Oxley has been felt throughout the organization. On the plus side, it has resulted in renewed evaluation of our internal control processes, and in some cases, identified areas where efficiencies could be gained. Concurrently, we have been able to grow our company through organic growth, as evidenced by strong loan volumes, and the results of our fee-based affiliates. Sterling's ability to handle these initiatives simultaneously is a tribute to our team of employees who enjoy the challenges of growing a company, while being respectful of the ever changing regulatory environment that exists today."

30.     On November 9, 2004 Sterling filed its Q3 2004 report on Form 10-Q with the SEC reiterating and repeating the information in the October 26, 2004 press release. The Form 10-Q was signed and separately certified by Defendant Moyer pursuant to Sections 302 & 906 of the SOX.

31.     On January 25, 2005 Sterling issued a materially false and misleading press release announcing "record earnings" for Q4, ended December 31, 2004, and FY 2004. The press release states in relevant part:

> Sterling Financial Announces Record Earnings
>
> LANCASTER, PA — Sterling Financial Corporation (Nasdaq:SLFI) announced record earnings for the quarter and year ending December 31, 2004.
>
> J. Roger Moyer, president and chief executive officer of Sterling Financial Corporation, commenting on 2004's results, stated, "2004 has been an outstanding year for Sterling Financial Corporation, as we produced another year of record earnings...."
>
> Moyer added, "Our team of over 1,000 employees should be complimented for their efforts in 2004. In addition to completing the acquisitions of StoudtAdvisors and Pennsylvania State Bank and entering into the New Castle, Del., market, they were able to dedicate substantial resources on documenting our compliance with Section 404 of Sarbanes-Oxley. Despite these dynamic factors, we were able to improve on our positive earnings momentum. 2004 has been a rewarding year for Sterling's shareholders and employees, and we look forward to continued success in 2005."

11

Results of Operations

Quarter Ended December 31, 2004

Sterling's net income was $8.984 million for the quarter ended December 31, 2004, an increase of $991,000, or 12.4 percent from the fourth quarter of 2003. Diluted earnings per share totaled $0.40 for the fourth quarter 2004 versus $0.37 for the same period in 2003, an increase of 8.1 percent. Return on average realized equity for the fourth quarter of 2004 was 14.82 percent, compared to 15.59 percent in 2003.

*    *    *    *

Twelve Months Ended December 31, 2004

Sterling's net income was $33.329 million for the year ended December 31, 2004, an increase of $4.270 million, or 14.7 percent, over the same period in 2003. Diluted earnings per share totaled $1.51 for the year ended December 31, 2004, versus $1.35 in 2003, an increase of 11.9 percent. Return on average realized equity for 2004 was 15.00 percent, compared to 15.10 percent in 2003.

32.    On March 30, 2005, Sterling filed its Annual Report for 2004 on Form 10-K with the SEC reiterating and repeating the information in the January 25, 2005 press release. The Form 10-K was signed and separately certified by Defendant Moyer pursuant to Sections 302 & 906 of the SOX.

33.    On April 25, 2005, Sterling issued a press release announcing that J. Bradley Scovill ("Scovill") was assigned to a newly created post of group executive of the Company's financial services group. The press release stated that "Scovill's current chief financial officer responsibilities will be assumed by [defendant] Tito L. Lima who is joining Sterling on May 23, 2005." The press release also states in relevant part:

> The creation of this new executive role is a direct result of our ability to successfully execute our corporate strategies. Today, 44 percent of our net income is generated by our non-banking financial services affiliates," said J. Roger Moyer, Jr., president and chief executive officer of Sterling Financial Corporation. "Our strategy for many years has been to grow Sterling through our core banking affiliates and broaden our menu of financial services through the addition of companies that complement each

other. From basic banking, we have expanded into specialty commercial financing; fleet and equipment leasing; investment, trust and brokerage services; insurance services; and human resources consulting. Brad will be working with these entities to provide corporate level direction and leadership."

Moyer said Scovill has played a pivotal role in Sterling's growth and has been involved firsthand in the acquisition of some of the companies that have joined Sterling. Moyer also welcomed Lima to Sterling as chief financial officer.

34.    On April 26, 2005 Sterling issued a materially false and misleading press release announcing "record earnings" for Q1, ended March 31, 2005 and a stock split. The press release states in relevant part:

Sterling Financial Corporation Announces Record Earnings and Declaration of a Stock Split

LANCASTER, PA. (April 26, 2005) — Sterling Financial Corporation (NASDAQ:SLFI) today reported record earnings for the quarter that ended on March 31, 2005, and declared a 5-for-4 stock split, to be effected in the form of a 25 percent stock dividend.

"Sterling continues to benefit from the alignment of its banking and financial services affiliates to offer a full menu of financial services options in established and growth markets," said J. Roger Moyer, Jr., president and chief executive officer of Sterling Financial Corporation.....

The board of directors announced the 5-for-4 stock split to be effected in the form of a 25 percent stock dividend to shareholders of record on May 13, 2005 and payable on June 1, 2005. The board believes the stock split rewards the shareholders for continued growth and profitability of the company, while allowing for a broader distribution of shares and the potential for a greater number of investors to own shares of Sterling.

In the following earnings discussion and financial information presentation, all per share information has been restated to reflect the 5-for-4 split, effected in the form of a 25 percent stock dividend.

Results of Operations

Sterling's net income was $9.279 million for the quarter ended March 31, 2005, an increase of $1.650 million, or 21.6 percent from the first quarter of 2004. Diluted earnings per share totaled $0.316 for the first quarter of 2005 versus $0.280 for the same period in 2004, an increase of 12.9

percent. Return on average realized equity for the first quarter of 2005 was 13.82 percent, compared to 14.78 percent in 2004.

35.    On May 10, 2005, Sterling filed its Q1 2005 report on Form 10-Q with the SEC reiterating and repeating the information in the April 26, 2005 press release. The Form 10-Q was signed and separately certified by Defendant Moyer pursuant to Sections 302 & 906 of SOX.

36.    On July 26, 2005, Sterling issued a materially false and misleading press release announcing its Q2, ended June 30, 2005 results. The press release states in relevant part:

Sterling Financial Corporation Announces Second Quarter Earnings

LANCASTER, PA (July 26, 2005) — Sterling Financial Corporation (Nasdaq:SLFI) reported record earnings for the quarter and six months ended June 30, 2005.

"The second quarter 2005 is a continuation of the momentum that Sterling continues to experience," said J. Roger Moyer, Jr., president and chief executive officer of Sterling Financial Corporation. "Sterling's strength stems from our diverse business lines and revenue streams, serving high-growth markets, a strong capital position to fund growth, excellent credit quality, engaged employees and experienced leadership."

\* \* \* \*

Sterling's net income was $9.684 million for the quarter ended June 30, 2005, an increase of $1.468 million, or 17.9 percent from the second quarter of 2004. Diluted earnings per share totaled $0.331 for the second quarter of 2005 versus $0.299 for the same period in 2004, an increase of 10.7 percent. Return on average realized equity for the second quarter of 2005 was 14.00 percent, compared to 15.40 percent in 2004.

\* \* \* \*

Sterling's net income was $18.963 million for the six months ended June 30, 2005, an increase of $3.118 million, or 19.7 percent from the same period in 2004. Diluted earnings per share totaled $0.647 for the six months ended June 30, 2005 versus $0.580 for 2004, an increase of 11.6 percent. Return on average realized equity for the first half of 2005 was 13.92 percent, compared to 15.10 percent in 2004. The decrease in return on average realized equity, despite an increase in earnings, is due to an

increase in stockholder's equity that resulted from the issuance of stock to acquire Corporate Healthcare Strategies and Pennsylvania State Bank in 2004.

Sterling has continued its trend of improving net interest income, from $46.287 million for the six months ended June 30, 2004 to $55.885 million in 2005, a 20.7 percent increase.....

*    *    *    *

Moyer stated, "Despite the loan growth that Sterling has experienced during 2005, our asset quality ratios remain strong, demonstrating our focus on growing assets without sacrificing credit quality. Sterling is committed to maintaining strong asset quality, as we recognize it is a key driver of financial performance."

37.     On August 9, 2005, Sterling filed its Q2 2005 report on Form 10-Q with the SEC reiterating and repeating the information in the July 26, 2005 press release. The Form 10-Q was signed and separately certified by Defendant Moyer pursuant to Sections 302 & 906 of the SOX.

38.     On October 25, 2005, Sterling issued a materially false and misleading press release announcing its Q3, ended September 30, 2005, results and "record earnings". The press release states in relevant part:

Sterling Financial Corporation Announces Third Quarter Earnings

LANCASTER, PA (October 25, 2005) — Sterling Financial Corporation (NASDAQ:SLFI) reported record earnings for the quarter and nine months ended September 30, 2005.

"We are pleased with another quarter of record earnings and achieving our desired growth goals," said J. Roger Moyer, Jr., president and chief executive officer of Sterling Financial Corporation. "Our growth in existing and new markets has led to solid performances in both our Banking Services Group and Financial Services Group affiliates."

*    *    *    *

Sterling's net income was $10.086 million for the quarter ended September 30, 2005, an increase of $1.586 million, or 18.7 percent from the third quarter of 2004. Diluted earnings per share totaled $0.344 for the third quarter of 2005 versus $0.307 for the same period in 2004, an increase of 12.1 percent. Return on average realized equity for the third

15

quarter of 2005 was 14.07 percent, compared to 15.01 percent in 2004.

\* \* \* \*

"Despite some recent compression, a trend that the industry has been experiencing for the past several quarters, our net interest margin continues to exceed our peer group" Moyer added. "Given Sterling's diversified product offering, pressure in our net interest margin should be lessened by growth in the earnings contributions of our financial services affiliates."

\* \* \* \*

Sterling's net income was $29.049 million for the nine months ended September 30, 2005, an increase of $4.704 million, or 19.3 percent from the same period in 2004. Diluted earnings per share totaled $0.991 for the nine months ended September 30, 2005, versus $0.887 for 2004, an increase of 11.7 percent. Return on average realized equity for the first three quarters of 2005 was 13.97 percent, compared to 15.07 percent in 2004. The decrease in return on average realized equity, despite an increase in earnings, is due to an increase in stockholders' equity that resulted from the issuance of stock to acquire Corporate Healthcare Strategies (d/b/a Stoudt Advisors) and Pennsylvania State Bank in 2004.

\* \* \* \*

Sterling's financial services affiliates non-interest income increased $5.789 million, or 18.1 percent. The acquisition of Corporate Healthcare Strategies in June 2004 attributed to $2.643 million of the increase. The remaining increase experienced resulted from organic growth and approximately $820,000 in gains on sales of loans and finance receivables, which totaled $955,000 for the nine months ended September 30, 2005 compared to $135,000 in 2004. The sale of these assets allows for the funds to be reinvested in new asset growth and to limit Sterling's credit concentration within one industry, and is expected to be a funding source for Sterling in the future.

39.   On November 9, 2005, Sterling filed its Q3 2005 report on Form 10-Q with the

SEC reiterating and repeating the information in the October 25, 2005 press release. The Form

10-Q was signed and separately certified by Defendant Moyer pursuant to Sections 302 & 906 of

SOX.

40.    On January 24, 2006 Sterling issued a materially false and misleading press release announcing its Q4, ended December 31, 2005, results and "record earnings". The press release states in relevant part:

> Sterling Financial Corporation Announces Fourth Quarter and Year End Earnings
>
> LANCASTER, PA (January 24, 2006) — Sterling Financial Corporation (NASDAQ:SLFI) reported record earnings for the quarter and year ended December 31, 2005.
>
> "Our record performance during 2005 is the result of our focus on growth in existing markets, broadening our product mix and entering new markets," said J. Roger Moyer, Jr., president and chief executive officer, Sterling Financial Corporation. "We are especially pleased with loan and deposit growth, an increase in net interest income and our strong credit quality."
>
> \*    \*    \*    \*
>
> Sterling's net income was $10.2 million for the quarter ended December 31, 2005, an increase of $1.2 million, or 13.7 percent from the fourth quarter of 2004. Diluted earnings per share totaled $0.35 for the fourth quarter of 2005 versus $0.32 for the same period in 2004, an increase of 9.4 percent. Return on average realized equity for the fourth quarter of 2005 was 13.97 percent, compared to 14.82 percent in 2004. Return on tangible equity was 20.53 percent in 2005 compared to 19.53 percent in 2004.
>
> \*    \*    \*    \*
>
> Sterling's net income was $39.3 million for the year ended December 31, 2005, an increase of $5.9 million, or 17.8 percent from the same period in 2004. Diluted earnings per share totaled $1.34 for the year ended December 31, 2005, versus $1.21 for 2004, an increase of 10.7 percent. Return on average realized equity was 13.97 percent, compared to 15.00 percent in 2004. The decrease in return on average realized equity, in spite of an increase in earnings, is due to an increase in stockholders' equity that resulted from the issuance of stock to acquire Corporate Healthcare Strategies (d/b/a StoudtAdvisors) and Pennsylvania State Bank in 2004 and the related impact of purchase accounting. Return on tangible equity was 20.61 percent in 2005, compared to 18.21 percent in 2004.
>
> \*    \*    \*    \*

Sterling's financial services segments non-interest income increased $6.2 million, or 14.2 percent. The acquisition of Corporate Healthcare Strategies in June 2004 attributed to $2.4 million to the increase. The remaining increase was primarily due to higher rental income on operating leases of $2.5 million and an increase of approximately $1.2 million in gains on sale of finance receivables.

\*   \*   \*   \*

The allowance for loan losses of $21.0 million, represented 1.00 percent of total loans at December 31, 2005, compared to $18.9 million, or 0.99 percent at December 31, 2004. Non-performing loans as a percent of total loans decreased 2 basis points from 0.24 percent at December 31, 2004, to 0.22 percent at December 31, 2005. This decrease was attributable to strong credit quality, lower delinquency trends and strong loan growth during 2005.

41.    On March 15, 2006, Sterling filed its annual report on Form 10-K with the SEC reiterating and repeating the information in the January 24, 2006 press release. The Form 10-K was signed and separately certified by Defendant Moyer pursuant to Sections 302 & 906 of SOX.

42.    On April 25, 2006, Sterling issued a materially false and misleading press release announcing its Q1, ended March 31, 2006, results and "record earnings". The press release states in relevant part:

> Sterling Financial Corporation of Lancaster, Pa., Announces Record First Quarter Earnings
>
> LANCASTER, PA (April 25, 2006) — Sterling Financial Corporation (NASDAQ:SLFI) reported strong earnings for the first quarter ended March 31, 2006.
>
> "Building on the progress that we achieved during 2005 and previous years, we are pleased to begin 2006 with a strong first quarter – one highlighted by continued growth in revenues, and the alignment of our Financial Services Group with our Banking Services Group" said J. Roger Moyer, Jr., President and Chief Executive Officer, Sterling Financial Corporation. "Our strength is attributable to our consistency in performance and deliberate execution of a strategy that focuses on the successes of our customers, our shareholders and our employees."

\*   \*   \*   \*

18

Sterling's net income was $10.2 million for the quarter ended March 31, 2006, an increase of $0.9 million, or 9.5 percent from the first quarter of 2005. Diluted earnings per share totaled $0.35 for the first quarter of 2006 versus $0.32 for the same period last year, an increase of 9.4 percent. Return on assets for the first quarter of 2006 was 1.41 percent, compared to 1.38 percent in 2005. For the first quarter of 2006, return on realized equity and return on tangible equity were 13.88 percent and 20.26, return on realized equity and return on tangible equity were 13.88 percent and 20.26 percent, respectively, compared to 13.82 percent and 20.30 percent, respectively, in 2005.

43.    On May 10, 2006, Sterling filed its Q1 2006 report on Form 10-Q with the SEC reiterating and repeating the information in the April 25, 2006 press release. The Form 10-Q was signed and separately certified by Defendant Moyer pursuant to Sections 302 & 906 of SOX.

44.    On May 17, 2006 Mary Ann Detwiler tendered her resignation as Chief Accounting Officer of Sterling.

45.    On July 25, 2006, Sterling issued a materially false and misleading press release announcing its Q2, ended June 30, 2006, results and "record earnings". The press release states in relevant part:

Sterling Financial Corporation of Lancaster, Pa., Announces Record Earnings

LANCASTER, PA (July 25, 2006) — Sterling Financial Corporation (NASDAQ:SLFI) reported record earnings for the quarter and six months ended June 30, 2006.

"We delivered another quarter of solid performance," said J. Roger Moyer, Jr., president and chief executive officer of Sterling Financial Corporation. "While we have experienced some modest compression in our net interest margin, our company is well positioned to meet a challenging interest rate environment as we continue to focus on revenue growth by delivering a broad portfolio of complementary financial services through our banks and financial services group companies."

*    *    *    *

Sterling's net income was $10.3 million for the quarter ended June 30, 2006, an increase of $597,000, or 6.2 percent from the second quarter of 2005. Diluted earnings per share totaled $0.35 for the second quarter of

2006 versus $0.33 for the same period in 2005, an increase of 6.1 percent. Return on assets for the second quarter of 2006 was 1.37 percent as compared to 1.39 percent for the same period last year, while return on average realized equity and return on average tangible equity were 13.71 percent and 20.55 percent, respectively for the second quarter of 2006 as compared to 14.00 percent and 21.10 percent, respectively for the same period last year.

Total revenue, comprise of net interest income and non-interest income excluding net gains on sale of securities, totaled $48.5 million for the second quarter of 2006, and increase of $3.1 million or 6.9 percent from the same period last year. Meanwhile, non-interest expense totaling $32.8 million for the second quarter of 2006 increased $2.0 million or 6.6 percent from the second quarter of 2005. As a result, the efficiency ratio improved from 60.86 percent for the three months ended June 30, 2005 to 60.45 percent for the second quarter of 2006.

Sterling has continued its trend of increasing net interest income, from $28.3 million for the second quarter of 2005 to $30.4 million in 2006, a 7.4 percent increase. The growth in net interest income has resulted primarily from the continued organic growth in loans and deposits, particularly higher yielding loans, including commercial loans and finance receivables. The net interest margin was 4.77 percent for the second quarter of 2006 as compared to 4.83 percent for the three months ended March 31, 2006, and 4.81 percent for the quarter ended June 30, 2055. While Sterling has been successful in managing its net interest margin by attracting new households and growing its loans and deposits, it has also experienced pressure in its net interest margin primarily resulting from the relatively flat yield curve, when compared to historical levels, and increased pricing competition on loans and deposits.

\*    \*    \*    \*

Sterling's net income was $20.4 million for the six months ended June 30, 2006, an increase of $1.5 million, or 7.8 percent from the same period in 2005. Diluted earnings per share totaled $0.70 for the six months ended June 30, 2006, versus $0.65 for 2005, and increase of 7.7 percent. Return on assets, return on average realized equity and return on average tangible equity were 1.39 percent, 13.79 percent, and 20.40 percent, respectively, for the six months ended June 30, 2006, as compared to 1.39 percent, 13.92 percent and 20.59 percent, respectively, for the same period last year.

Total revenue of $95.9 million for the first six months of 2006 increased $7.3 million or 8.3 percent from the same period last year and exceeded growth in the expenses of $4.2 million or 6.8 percent, for the same comparison period. This resulted in an improvement in Sterling's

efficiency ratio from 61.67 percent for the six months of 2005 to 60.64 percent for the first six months of 2006.

Sterling's net interest income improved from $5.9 million for the six months ended June 30, 2005 to $60.1 million in 2006, a 7.6 percent increase. This increase was driven primarily by growth in loans and deposits, partially offset by a decrease of three basis points in the net interest margin to 4.80 percent as a result of the interest rate environment and pricing competition during the first six months of 2006.

\* \* \* \*

Credit quality remained strong in the second quarter of 2006. The allowance for loan losses of $22.4 million represented 1.00 percent of total loans at June 30, 2006 compared to $19.1 million, or 0.95 percent at June 30, 2005 and $21.0 million, or 1.00 percent at December 31, 2005. Non-performing loans to total loans were 0.22 percent at June 30, 2006 versus 0.19 percent at June 30, 2005 and 0.22 percent at December 31, 2005.

46.    On August 8, 2006, Sterling filed its Q2 2006 report on Form 10-Q with the SEC reiterating and repeating the information in the July 25, 2006, press release. The Form 10-Q was signed and separately certified by Defendant Moyer pursuant to Sections 302 & 906 of the SOX.

47.    On October 24, 2006, Sterling issued a materially false and misleading press release announcing its Q3, ended September 30, 2006 results. The press release states in relevant part:

Sterling Financial Corporation of Lancaster, Pa., Announces 3rd Quarter Earnings

LANCASTER, PA (October 24, 2006) — Sterling Financial Corporation (NASDAQ:SLFI) reported earnings for the quarter and nine months ended September 30, 2006.

\* \* \* \*

Sterling's net income for the third quarter ended September 30, 2006, was $5.6 million or $0.19 per diluted share, compared to $10.1 million or $0.34 per diluted share for the same period last year. Included in Sterling's third quarter 2006 net income was a non-cash impairment charge totaling $5.2 million ($8.0 million pre-tax). The impairment charge was related to Sterling's affiliated, Corporate Healthcare Strategies, LLC's (CHS), goodwill and intangible assets and reflects management's current estimate of the expected impairment (see non-interest expense

section for a more detailed explanation). Historically, this affiliate has not been a material contributor to Sterling's earnings or earnings per share. Excluding this charge, Sterling's third quarter 2006 net income would have been $10.8 million, an increase of 6.8 percent from the same period last year, while diluted earnings per share would have been $0.37, an increase of 8.8 percent from the same quarter in the prior year.

*    *    *    *

....J. Roger Moyer, Jr., president and chief executive officer of Sterling Financial Corporation. "Our customer acquisition strategy continued to strengthen as we saw growth in both our loans and deposits. Referrals among our diverse lines of business also are helping us drive revenue."

*    *    *    *

Sterling's net income was $26.0 million for the nine months ended September 30, 2006, or $0.89 per diluted share, compared to $29.0 million or $0.99 per diluted share for the same period last year. Excluding the impact of the impairment charge, net income would have been $31.2 million, an increase of 7.4 percent from the same period last year, while diluted earnings per shared would have been $1.07 for the nine months ended September 30, 2006, an increase of 8.1 percent from the same period last year. Return on assets, return on average realized equity and return on average tangible equity were 1.16 percent,11.52 percent, and 17.25 percent, respectively, for the nine months ended September 30, 2006. Excluding the impact of the impairment charge, return on assets, return on average realized equity and return on average tangible equity would have been 1.39 percent, 13.82 percent, and 20.55 percent, respectively, as compared to 1.39 percent, 13.97 percent and 20.63 percent, respectively, for the same period last year.

*    *    *    *

Credit quality remained strong in the third quarter of 2006. Non-performing loans to total loans were 0.19 percent at September 30, 2006, versus 0.17 percent at September 30, 2005, and 0.22 percent at December 31, 2005. The allowance for loan losses of $22.8 million represented 1.00 percent of total loans at September 30, 2006, compared to $20.22 million, or 0.96 percent at September 30, 2005 and $21.0 million, or 1.00 percent at December 31, 2005.

48.    On November 8, 2006, Sterling filed its Q3 2006 report on Form 10-Q with the

SEC reiterating and repeating the information in the October 24, 2006 press release. The Form

22

10-Q was signed and separately certified by Defendant Moyer pursuant to Sections 302 & 906 of

SOX.

49.    On January 23, 2007, Sterling issued a materially false and misleading press

release announcing its Q4, ended December 31, 2006, and FY 2006 results. The press release

states in relevant part:

> Sterling Financial Corporation of Lancaster, Pa., Announces Fourth
> Quarter and Year End Earnings
>
> LANCASTER, PA (January 23, 2007) — Sterling Financial Corporation
> (NASDAQ:SLFI) reported earnings for the quarter and year ended
> December 31, 2006.
>
> "2006 was a challenging year for our company and for the financial
> services industry," said J. Roger Moyer, Jr., president and chief executive
> officer of Sterling Financial Corporation. "I am pleased that we continued
> to advance our core customer strategies and, as a result, were able to turn
> in a solid financial performance, considering the interest rate environment
> and competitive pressures in our markets."
>
> *    *    *    *
>
> Sterling's net income for the quarter ended December 31, 2006 was $10.4
> million or $0.35 per diluted share, compared to $10.2 million or $0.35 per
> diluted share for the same period last year. Fourth quarter 2006 and 2005
> net income included the impact of discontinued operations totaling net
> after-tax losses of $215,000 or $0.01 per diluted share, and $13,000 or
> $0.00 per diluted share, respectively. On December 31, 2006 Sterling
> divested three related lines of business associated with its insurance
> segment, Corporate Healthcare Strategies, LLC ("CHS"), Professional
> Services Group and certain insurance assets of its property and casualty
> insurance agency, Lancaster Insurance Group, LLC. All prior period
> results included herein have been reclassified to conform to the current
> presentation which displays the operating results of the divested
> businesses as discontinued operations. These reclassifications had no
> effect on net income or stockholders' equity. Unless otherwise noted, the
> remaining discussion and tabular data relate only to Sterling's continuing
> operations.
>
> Sterling's net income from continuing operations for the quarter ended
> December 31, 2006 was $10.7 million, an increase of $427,000, or 4.2
> percent from the fourth quarter of 2005. Diluted earnings per share totaled
> $0.36 for the fourth quarter of 2006 versus $0.35 for the same period in
> 2005, an increase of 2.9 percent. Return on average assets and return on

average realized equity were 1.32 percent and 13.27 percent, respectively, for the fourth quarter of 2006, compared to 1.40 percent and 13.98 percent, respectively, for the same period last year. Return on average tangible equity was 18.93 percent for the quarter ended December 31, 2006, compared to 20.22 percent for the same period last year.

\* \* \* \*

Sterling's net income for 2006 was $36.5 million or $1.24 per diluted share, compared to $39.3 million of $1.34 per diluted share for 2005. Included in Sterling's 2006 and 2005 net income was discontinued operations totaling a net after-tax loss of $5.1 million or $0.17 per diluted share, and net income of $210,000 or $0.01 per diluted share, respectively.

Sterling's net income from continuing operations was $41.6 million for the year ended December 31, 2006, an increase of $2.5 million, or 6.5 percent as compared to year ended December 31, 2005. Diluted earnings per share totaled $1.41 for 2006 versus $1.33 for 2005 an increase of 6.0 percent. Return on average assets, return on average realized equity and return on average tangible equity were 1.36 percent, 13.59 percent, and 19.76 percent, respectively, for 2006, as compared to 1.38 percent, 13.89 percent and 20.13 percent, respectively, for the prior year.

50.    On March 16, 2007, the Company filed its annual report for 2006 on Form 10-K with the SEC reiterating and repeating the information in the January 23, 2007 press release. The Form 10-K was signed and separately certified by Defendant Moyer pursuant to Sections 302 & 906 of SOX.

## UNLAWFUL SCHEME TO DEFRAUD SO AS TO INFLATE STERLING'S STOCK PRICE IN VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND RULES 10b-5(a) AND (c), THEREUNDER

51.    Throughout the Class Period EFI and certain of its officers and directors, employed devices, schemes, and artifices to defraud Plaintiff and other investors in Sterling stock by knowingly providing materially false and misleading financial information concerning EFI to persons responsible for the financial reporting for Sterling. EFI and certain of its officers and directors knew and/or recklessly disregarded that providing such information would cause Sterling to issue materially false and misleading financial statements with the SEC and the investing public. As alleged more fully herein, when the truth regarding the scheme began to

materialize in piecemeal fashion, Plaintiff and the Class were damaged. Had Plaintiff and the Class been aware of the scheme they would not have purchased Sterling's stock at the artificially inflated prices or would not have purchased the stock at all.

52.    On April 19, 2006, Sterling issued a press release announcing a postponement of the Company's 2007 Q1, ended March 31, 2007 financial results. The press release states in relevant part:

> Sterling Financial Corporation of Lancaster, Pa., Postpones First Quarter Earnings Release Thursday, April 19, 4:40 pm ET
>
> LANCASTER, Pa., April 19/PRNewswire-FirstCall/ -- Sterling Financial Corporation (Nasdaq: SLFI – News) is postponing the release of its earnings for the quarter ended March 31, 2007. The release was originally scheduled for April 24th.
>
> Sterling's management has received information suggesting irregularities related to certain financing contracts in one of its financial services group companies, Equipment Finance LLC (EFI). EFI provides commercial financing for the soft pulp logging and land-clearing industries, primarily in the southeastern United States.
>
> Management moved immediately to notify the Audit Committee and Board of Directors about this information, and the Audit Committee engaged nationally recognized, expert accountants and legal counsel to conduct an independent investigation.
>
> "As you would expect, Sterling is taking this matter very seriously," said J. Roger Moyer, Jr., president and chief executive officer of Sterling Financial Corporation. "We are committing all necessary resources to complete the investigation in a thorough, timely and professional manner and to take any remedial steps necessary."
>
> At this time, Sterling has not determined the financial impact of any irregularities. Further investigation is required for a final determination of earnings for the first quarter, which may also make it necessary resources to complete the investigation in a thorough, timely and professional manner and to take any remedial steps necessary."

53.    On April 30, 2007, before market open, Sterling announced that it expects to restate its previously issued financial statements for FY 2004 through and including FY 2006 and the interim periods. Sterling announced that the prospective restatement may require Sterling

and its affiliates to raise "additional capital" and that based on Sterling's investigation two senior executives of EFI, have been placed on leave. The press release states in relevant part:

Sterling Financial Corporation of Lancaster, Pa., Expects To Restate Financial Statements and Postpones 2007 Annual Meeting Monday, April 30, 9:02 am ET

LANCASTER, Pa., April 30/PRNewswire-FirstCall/ -- Sterling Financial Corporation (Nasdaq: SLFI – News) announced today that as a result of information obtained from an internal investigation, it expects to be restating financial statements for the years 2004 through 2006 and is postponing its 2007 annual shareholder meeting.

On April 19th, Sterling Financial Corporation announced that it had received information suggesting irregularities in certain financing contracts in one of its financial services group companies, Equipment Finance LLC (EFI). EFI provides commercial financing for the soft pulp logging and land-clearing industries, primarily in the southeastern United States. Accordingly, Sterling postponed the release of earnings for the quarter ended March 31, 2007.

Taking this matter very seriously, management moved immediately to notify the Audit Committee and Board of Directors about this information, and the Audit Committee engaged nationally recognized, expert accountants and legal counsel to conduct an independent investigation. Sterling is committing all necessary resources to complete the investigation in a thorough, timely and professional manner and to take any corrective steps necessary.

Based on preliminary information from the investigation and management's own review, Sterling's Board of Directors concluded on April 29, 2007, that the Corporation's previously issued financial statements, the reports on the audited financial statements and related internal controls issued by its independent registered public accounting firm, and all earnings releases issued for 2004 through 2006, should no longer be relied upon due to the expected material impact of these irregularities. Sterling expects to restate or amend these financial statements once the extent of the impact is known, which may require the Corporation and its affiliates to raise additional capital. The impact of the irregularities may also be material for years prior to 2004, depending on the results of the ongoing investigation.

In connection with the investigation, two senior executives of EFI have been placed on leave.

Sterling is postponing its 2007 annual shareholder meeting, originally scheduled for May 8, 2007, and the Corporation does not expect that it will be able to file its Form 10-Q by the due date of May 10th.

"I want to assure shareholders, customers and the public that Sterling is moving aggressively to take corrective action on the issues that have emerged during this

investigation. We are taking steps to strengthen EFI's management structure and internal control processes immediately," said J. Roger Moyer, Jr., president and chief executive officer of Sterling Financial Corporation.

Sterling has implemented changes in EFI's management structure, installing an acting Chief Operating Officer. The Chief Executive Officer of EFI has voluntarily relinquished his role as President, CEO, and EFI Board member; however, he will be available to assist the company, in a non-management role, at the request of management. In addition, EFI's Board of Managers has been augmented by the addition of two new members. Internal control processes and procedures are being reviewed and enhanced.

"We understand that our shareholders, customers, employees and communities may have questions. We ask for your patience, and continued loyalty, as we complete our investigation," added Moyer.

Sterling and its affiliates are committed to delivering excellent relationship-based service, quality and care for our clients and customers, a proud tradition that is the hallmark of Sterling.

54.    The April 30, 2007, announcement shocked the market. On April 27, 2007, the prior trading day, the Company's stock closed at $20.72 on 37,100 shares traded. The April 30, 2007 announcement caused Sterling's stock to close trading on April 30, 2007 at $16.65 a share, down $4.07 a share or 19%.

55.    Upon information and belief, the individuals placed on leave at EFI were Michael J. Schlager—Manager and Senior Vice President and Joseph Bras—Manager and Senior Vice President. On April 26, 2007, in a filing with the Florida Secretary of State, EFI deleted these individuals from its annual report.

56.    Sterling's stock continued to fall. On May 1, 2007, Sterling's stock closed down an additional $2.00 a share or 12%.

57.    On May 24, 2007, investors first publicly learned about the details of the scheme. After market-close, Sterling issued an announcement entitled "Sterling Financial of Lancaster, PA Announces Initial Investigation Findings; Significant Sophisticated Loan Scheme Uncovered." According to the announcement, the investigation conducted by Sterling has

27

"revealed evidence of a sophisticated loan scheme, orchestrated deliberately by certain EFI officers and employees over an extended period of time, to conceal credit delinquencies, falsify financing contracts and related documents, and subvert Sterling's established internal controls and reporting systems." Sterling also described this conduct as "deceptive activities." The announcement also states that Sterling was expected to take a cumulative after-tax charge to its FY 2006 financial statements of $145 million to $165 million. The announcement states in relevant part:

> LANCASTER, Pa., April 30/PRNewswire-FirstCall/ -- Sterling Financial Corporation (Nasdaq: SLFI – News) announced today, based on information from a still ongoing investigation, that previously reported irregularities in certain financing contracts in one of Sterling's financial services affiliates, Equipment Finance LLC (EFI), are a direct result of collusion by a group of EFI employees. Sterling is committing all necessary resources to complete the investigation in a thorough, timely and professional manner and to take all necessary corrective steps.
>
> Sterling's investigation to date has revealed evidence of a sophisticated loan scheme, orchestrated deliberately by certain EFI officers and employees over an extended period of time, to conceal credit delinquencies, falsify financing contracts and related documents, and subvert Sterling's established internal controls and reporting systems. The scheme was able to avoid detection until recently due to the depth and breadth of the collusion. In other words, employees at different seniority levels and functional areas were apparently involved.
>
> These deceptive activities were limited to EFI and no customer accounts in Sterling's banks or affiliates were involved.
>
> The Board of Directors, upon the recommendation of management through the Disclosure Committee, and with the concurrence of the Audit Committee, concluded on May 23 that Sterling will be required to record, under U.S. generally accepted accounting principles, a material of impairment of certain assets of EFI. These assets include EFI financing contracts, interest associated with those contracts, and potentially goodwill attributable to EFI. While Sterling has not determined the annual periods in which the impairment occurred, Sterling currently expects to record a cumulative after-tax charge to the December 31,2006 financial statements of approximately $145 million to $165 million, based upon the results of the investigation's preliminary findings. However, at this point in the investigation, Sterling has not determined the final financial impact, including any potential recoveries, such as insurance and collateral.

Sterling is working closely with its regulators and all appropriate federal authorities on the ongoing investigation.

"Our investigation has now revealed evidence that Sterling and its shareholders were subjected to a significant, sophisticated loan scheme, specifically designed to deceive and avoid detection," said J. Roger Moyer, Jr., president and chief executive officer of Sterling Financial Corporation. "Our priority now is to address the problem and continue serving our customers. Decisive actions have been taken to reinforce oversight and centralize operational management at EFI."

As a result of our investigation, Sterling implemented immediate changes in EFI's management structure. Five EFI employees have now been terminated, including the Chief Operating Officer and Executive Vice President, and Sterling installed an acting Chief Operating Officer. Further, a special collections team has been deployed to maximize recoveries from the impaired contracts.

* * * *

"Having taken immediate action, we are now focused on developing a long-term plan," Moyer added. "Sterling, through its affiliates, has a successful history tracing back more than 150 years, and we're currently developing a strategy for the future to rebuild shareholder value."

* * * *

Moyer continued, "This has certainly been a difficult time for all of us at Sterling, but among our organization's greatest assets are the more than 1,100 hardworking employees, strong franchises and market position, and loyal customers. All of our banking and other offices continue to provide the same exceptional service that customers have relied on for over 150 years."

## PROOF OF PLAINTIFF'S RELIANCE- FRAUD-ON-THE-MARKET DOCTRINE

58.     Plaintiff and members of the Class reasonably relied on the misleading statements set forth above in purchasing Sterling Stock during the Class Period.

59.     Plaintiff relies upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

> a.     Defendants made misleading public statements or failed to disclose material facts during the Class Period;
>
> b.     the omissions and misleading statements were material;
>
> c.     the securities of the Company traded in an efficient market;

d.    the misleading statements and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

e.    Plaintiff and members of the Class purchased their Sterling securities between the time Defendants failed to disclose or misrepresented materialfacts and the time the true

facts were disclosed, without knowledge of the

omitted facts or misleading statements.

60.    At all relevant times, the market for Sterling's securities was an efficient market for the following reasons, among others:

(a)    Sterling's stock met the requirements for listing, and was listed and actively traded on the NASDAQ, an efficient and automated market;

(b)    As a regulated issuer, Sterling filed periodic public reports with the SEC and the NASDAQ and/or NASD;

(c)    Sterling regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(d)    Sterling's stock price reacted quickly in response to material news about the Company;

(e)    During the Class Period, Sterling was eligible to file registration statements on Form S-3 with the SEC;

(f)     Several well-known third party stock analysts issued reports on the Company during the Class Period; and

(g)     Numerous firms acted as market makers in Sterling stock during the Class Period.

61.     As a result of the foregoing, the market for Sterling's securities promptly digested current information regarding Sterling from all publicly available sources and reflected such information in Sterling's stock price. Under these circumstances, all purchasers of Sterling's securities during the Class Period suffered similar injury through their purchase of Sterling's securities at artificially inflated prices and a presumption of reliance applies.

## NO STATUTORY SAFE HARBOR

62.     The statutory safe harbor providing for forward-looking statements under certain circumstances does not apply to any of the false statements pled in this complaint, because none of the statements pled herein were identified as "forward-looking" when made. Nor did meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the statements accompany those statements. To the extent that the statutory safe harbor does apply to any statements pled herein and those statements are deemed to be forward-looking, Defendants are liable for those false forward-looking statements, because at the time each of those statements were made the speaker actually knew the forward-looking statement was false and/or the statements was authorized and/or approved by an executive officer of the Company, who actually knew that those statements wee false when made.

## COUNT I

## AGAINST DEFENDANTS EFI AND GRANER FOR VIOLATION OF SECTION 10(B) OF THE EXCHANGE ACT AND RULE 10B-5(A) AND (C) OF THE SECURITIES AND EXCHANGE COMMISSION

63.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

64.    This Count is asserted against Defendants EFI and Graner based upon Section 10(b) of the 1934 Act, 15 U.S.C. §78j(b) and Rule 10b-5(a) and (c) promulgated thereunder.

65.    Throughout the Class Period, defendant EFI acted through Graner, its President, CEO, and Manager. Graner's misconduct, willfulness, motive, knowledge and recklessness is therefore imputed to EFI. In the alternative, EFI is liable for the actions of Graner and certain of EFI's other officers, directors, and employees under the doctrine of respondeat superior.

66.    During the Class Period, EFI, Graner, along with other EFI directors, officers and employees engaged in a common plan, scheme, and unlawful course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices, and courses of business which operated as a fraud and deceit upon the Plaintiff and the other members of the Class in an effort to artificially inflate the stock of Sterling. EFI, Graner, along with other EFI directors, officers and employees knowingly and/or recklessly engaged in the sophisticated loan scheme described herein, with knowledge or reckless disregard that such a scheme would cause Sterling to issue materially false and misleading financial information about Sterling to the Plaintiff and the investing public.

67.    In ignorance of the Defendants' misrepresentations described above and the deceptive and manipulative devices and contrivances employed by said Defendants, Plaintiff and the other members of the Class relied, to their detriment, on the integrity of the market price of the stock in purchasing Sterling common stock. Had the Plaintiff and the other members of the Class known the truth, they would not have purchased said shares or would not have purchased them at the inflated prices that were paid.

68.     Plaintiff and the other members of the Class have suffered substantial damages as a result of the wrongs alleged herein in an amount to be proven at trial.

69.     By reason of the foregoing, Defendants directly violated Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c) promulgated thereunder in that they employed devices, schemes, and artifices to defraud; and engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the Plaintiff and the other members of the Class in connection with their purchases of Sterling stock during the Class Period.

70.     This action is being brought within two years after the discovery of the unlawful deceptive scheme and within five years of their initial stock purchases for which they seek compensation.

## COUNT II

### AGAINST THE CONTROLLING DEFENDANTS FOR
### VIOLATION OF SECTION 20(A) OF THE EXCHANGE ACT

71.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

72.     Each of the Controlling Defendants, by virtue of their management positions, directorships, stock ownership and/or specific acts described above, were, at the time of the wrongs alleged herein, controlling persons of EFI within the meaning of Section 20(a) of the 1934 Act.

73.     The Controlling Defendants had the power and influence and exercised the same to cause EFI to engage in the illegal conduct and practices complained of herein.

74.     By reason of the misconduct alleged herein, the Controlling Defendants are liable for the aforesaid wrongful conduct, and are liable to Plaintiff and to the other members of the Class for the substantial damages which they suffered in connection with their purchases of Sterling common stock during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of itself and the Class, prays for judgment as follows:

a.    Declaring this action to be a proper plaintiff class action maintainable pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure and declaring Plaintiff to be proper a representative of the Class and Lead Plaintiff;

b.    Awarding Plaintiff and the members of the Class damages together with interest thereon;

c.    Awarding Plaintiff and the other members of the Class their costs and expenses in this litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements; and

d.    Awarding Plaintiff and the members of the Class such other and further relief as may be just and proper under the circumstances.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury of all issues.

Dated:  June 11, 2007    _Jules Brody_

Jules Brody (JB 9151)
Howard T. Longman (HL 2489)
STULL, STULL & BRODY
6 East 45th Street
New York, NY 10017
Tel:  (212) 687-7230
Fax:  (212) 490-2022

Gary S. Graifman (GSG 2276)
Michael L. Braunstein (MLB 5973)
KANTROWITZ, GOLDHAMER & GRAIFMAN
747 Chestnut Ridge Road
Chestnut Ridge, NY 10977
Tel:  (845) 356-2570
Fax:  (845) 356-4335

**Attorneys for Plaintiff**

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

MATTHEW H. MASCHLER, being duly sworn, certifies as follows:

1.      I am a member and principal of Castle Strategic Trading, LLC ("Castle" or

"Plaintiff") and make this Certification in support of Castle's request for appointment as Lead

Plaintiff in the within action against Sterling Financial Corp. ("Sterling"), subsidiaries of Bank of

Lancaster, N.A. and Equipment Finance, LLC ("EFI"). I am authorized to sign this certification

on behalf of Castle.

2.      Castle is a company which engages in investing for itself and its members. Castle

made the investment decision to purchase Sterling securities for its own account as listed on the

"Transaction Summary" annexed to this Certification.

3.      I have reviewed the complaint against Sterling and subsidiaries EFI and Bank of

Lancaster and certain officers and directors thereof. I approve the allegations made and authorize

the filing of this complaint and/or a motion for lead plaintiff.

4.      Castle's purchases of Sterling common stock, the securities which are the subject

of this action, were not at the direction of counsel or in order to participate in this private action.

5.      Castle is willing to serve as a representative party on behalf of the class, including

providing testimony at deposition and/or trial, if necessary. Plaintiff understands that the

litigation is not settled, that this is not a claim form, and sharing in any recovery is not dependent

on execution of this Certification. Plaintiff is willing to serve as a representative party either

individually or as part of a group. Castle understands that a lead plaintiff is a representative party

whose acts on behalf of other class members in directing the action.

6.      To the best of my current knowledge, Castle has made no transactions during the

class period (April 27, 2004 to May 24, 2007) in the debt or equity securities that are the subject

of the action except those as follows:

[SEE ATTACHMENT HERETO]

7.    Castle has not served or sought to serve as a representative party in a federal

securities case in the last three years.

8.    Castle will not accept any payment for serving as a representative party on behalf

of the Class beyond Plaintiff's pro rata share of any recovery, except as ordered or approved by

the court pursuant to section 27(a)(4) of the Securities Act, or section 21D(a)(4) of the Securities

Exchange Act and including any award for reasonable costs and expenses directly relating to the

representation of the class.

9.    I hereby certify, under penalty of perjury that the foregoing is true and correct.


Dated: June 11, 2007

CASTLE STRATEGIC TRADING, LLC
BY: MATTHEW H. MASCHLER


2

**TRANSACTION SUMMARY FOR SLFI**
**Project STPD**
**From 01-01-07 To 05-30-07**

| Tran Code | Security | Trade Date | Settle Date | Quantity | Trade Amount |
|---|---|---|---|---|---|
| **BUYS** | | | | | |
| by | csusslfi | 5/2/2007 | 5/2/2007 | 100 | $ 1,630.25 |
| by | csusslfi | 5/2/2007 | 5/2/2007 | 70 | $ 1,142.58 |
| by | csusslfi | 5/2/2007 | 5/2/2007 | 130 | $ 2,124.53 |
| by | csusslfi | 5/2/2007 | 5/2/2007 | 24 | $ 394.14 |
| by | csusslfi | 5/2/2007 | 5/2/2007 | 32 | $ 527.44 |
| by | csusslfi | 5/2/2007 | 5/2/2007 | 300 | $ 4,947.75 |
| by | csusslfi | 5/2/2007 | 5/2/2007 | 100 | $ 1,649.25 |
| by | csusslfi | 5/2/2007 | 5/2/2007 | 100 | $ 1,642.25 |
| by | csusslfi | 5/2/2007 | 5/2/2007 | 44 | $ 722.59 |
| by | csusslfi | 5/2/2007 | 5/2/2007 | 100 | $ 1,644.25 |
| by | csusslfi | 5/2/2007 | 5/2/2007 | 100 | $ 1,644.25 |
| by | csusslfi | 5/2/2007 | 5/2/2007 | 100 | $ 1,644.25 |
| by | csusslfi | 5/2/2007 | 5/2/2007 | 100 | $ 1,644.25 |
| by | csusslfi | 5/2/2007 | 5/2/2007 | 75 | $ 1,233.19 |
| by | csusslfi | 5/2/2007 | 5/2/2007 | 100 | $ 1,644.25 |
| by | csusslfi | 5/2/2007 | 5/2/2007 | 200 | $ 3,288.50 |
| by | csusslfi | 5/2/2007 | 5/2/2007 | 125 | $ 2,050.31 |
| **TOTAL BUYS** | | | | **1,800** | **$ 29,574.03** |
| | | | | | |
| **SALES** | | | | | |
| sl | csusslfi | 5/25/2007 | 5/25/2007 | 100 | $ 1,079.72 |
| sl | csusslfi | 5/25/2007 | 5/25/2007 | 70 | $ 755.80 |
| sl | csusslfi | 5/25/2007 | 5/25/2007 | 40 | $ 431.89 |
| sl | csusslfi | 5/25/2007 | 5/25/2007 | 90 | $ 981.65 |
| sl | csusslfi | 5/25/2007 | 5/25/2007 | 24 | $ 261.77 |
| sl | csusslfi | 5/25/2007 | 5/25/2007 | 32 | $ 349.03 |
| sl | csusslfi | 5/25/2007 | 5/25/2007 | 54 | $ 588.99 |
| sl | csusslfi | 5/25/2007 | 5/25/2007 | 200 | $ 2,199.44 |
| sl | csusslfi | 5/25/2007 | 5/25/2007 | 46 | $ 500.35 |
| sl | csusslfi | 5/25/2007 | 5/25/2007 | 100 | $ 1,087.72 |
| sl | csusslfi | 5/25/2007 | 5/25/2007 | 54 | $ 587.37 |
| sl | csusslfi | 5/25/2007 | 5/25/2007 | 46 | $ 488.39 |
| sl | csusslfi | 5/25/2007 | 5/25/2007 | 44 | $ 467.16 |
| sl | csusslfi | 5/25/2007 | 5/25/2007 | 100 | $ 1,061.72 |
| sl | csusslfi | 5/25/2007 | 5/25/2007 | 100 | $ 1,061.73 |
| sl | csusslfi | 5/25/2007 | 5/25/2007 | 10 | $ 106.17 |
| sl | csusslfi | 5/25/2007 | 5/25/2007 | 90 | $ 951.95 |

| sl | csusslfi | 5/25/2007 | 5/25/2007 | 100 | $ | 1,057.72 |
|----|----------|-----------|-----------|-----|---|----------|
| sl | csusslfi | 5/25/2007 | 5/25/2007 | 10 | $ | 105.77 |
| sl | csusslfi | 5/25/2007 | 5/25/2007 | 65 | $ | 688.82 |
| sl | csusslfi | 5/25/2007 | 5/25/2007 | 100 | $ | 1,059.72 |
| sl | csusslfi | 5/25/2007 | 5/25/2007 | 35 | $ | 370.90 |
| sl | csusslfi | 5/25/2007 | 5/25/2007 | 100 | $ | 1,052.72 |
| sl | csusslfi | 5/25/2007 | 5/25/2007 | 65 | $ | 682.97 |
| sl | csusslfi | 5/25/2007 | 5/25/2007 | 125 | $ | 1,313.39 |
| **TOTAL SALES** | | | | **1,800** | **$** | **19,292.86** |

**P/L**      $ (10,281.17)