UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVE MACRINA, on behalf of himself and all others similarly situated,<br><br>             Plaintiff,<br><br>   v.<br><br>EQUIPMENT FINANCE, LLC, et al.,<br><br>             Defendants. | Docket No. 1:07-cv-04108-JGK |
| BRIAN JOHNSON, on behalf of himself and all others similarly situated,<br><br>             Plaintiff,<br><br>   v.<br><br>STERLING FINANCIAL CORPORATION, et al.,<br><br>             Defendants. | Docket No. 1:07-cv-04652-JGK |
| CASTLE STRATEGIC TRADING, INC., on behalf of itself and all others similarly situated,<br><br>             Plaintiff,<br><br>   v.<br><br>EQUIPMENT FINANCE, LLC, et al.,<br><br>             Defendants. | Docket No. 1:07-cv-05594-JGK |

| | |
|---|---|
| JEFFREY M. COOLEY,<br>on behalf of himself and all others<br>similarly situated,<br><br>              Plaintiff,<br><br>     v.<br><br>STERLING FINANCIAL<br>CORPORATION, et al.,<br><br>              Defendants. | :<br>:<br>:<br>:<br>: Docket No. 1:07-cv-05671-JGK<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CONSOLIDATION, APPOINTMENT OF LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL

Plaintiffs Paul A. Miller and Regina A. Miller (collectively, "Movants" or "The Millers"), residing at 523 Saratoga Road in Lancaster, Pennsylvania, by and through their attorneys, respectfully move for an order pursuant to FED. R. CIV. P. 42(a) consolidating the above-captioned actions, and, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"): (i) appointing Movants as Lead Plaintiffs and (ii) approving their selection of Chimicles & Tikellis LLP as Lead Counsel.

- 1 -

INTRODUCTION

I.    Nature of the Related Actions.

Each of the above captioned cases (collectively, the "Related Actions") are class actions brought on behalf of investors who purchased or otherwise acquired common stock issued by Sterling Financial Corporation ("Sterling" or the "Company") between April 27, 2004 and May 24 or 25, 2007 (the "Class Period"). Sterling's common stock is publicly traded on NASDAQ under the symbol "SLFI." All of the complaints filed in the Related Actions seek to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act"), based upon the same conduct.

Sterling, which is named as a defendant in two (2) of the Related Actions, is a diversified financial services company that is headquartered in Lancaster, Pennsylvania. Sterling and its affiliated entities provide a variety of banking services in south-central Pennsylvania, northern Maryland, and northern Delaware. Also named as a defendant two (2) of the Related Actions is Equipment Finance, LLC ("EFI"). EFI is a wholly-owned subsidiary of Sterling's affiliate bank, Bank of Lancaster County, N.A. ("Bank of Lancaster"),[1] which is also based in Lancaster. In addition to Sterling, EFI, and the Bank of Lancaster, numerous individual officers and directors of one or more of these entities are named as defendants in the Related Actions.

---

[1] The Bank of Lancaster is based in Strasburg, Pennsylvania (which is located within Lancaster County), and is named as a defendant in two (2) of the Related Actions.

All of the complaints filed in the Related Actions allege that the defendants violated § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder by issuing materially false and misleading statements related to EFI, for the purpose of artificially inflating Sterling's stock price.  On April 19, 2007, Sterling announced that it was postponing the release of its earnings figures for the quarter ended March 31, 2007, revealing that the Company was investigating "irregularities" at EFI.

On April 30, before the markets opened, Sterling issued a press release that disclosed that the Company's previously issued financial statements, reports on the audited financial statements and related internal controls, and all of its earnings releases issued between 2004 and 2006 "should no longer be relied upon due to the expected material impact of these irregularities [at EFI]."

The true nature of the fraud at EFI was further revealed in a press release issued by Sterling on May 24, 2007.  Sterling announced in this press release that the irregularities in certain financing contracts at EFI were "a direct result of collusion by a group of EFI employees."  In sharp contrast to the Company's disclosures from the prior month which described the internal conduct at EFI as mere "irregularities," the May 24 press release disclosed that long-standing deliberate collusion had been present at EFI.  The May 24 press release further announced that Sterling expects to record a cumulative after-tax charge of approximately $145 million to $165 million, and that five

- 3 -

(5) employees at EFI had been terminated as a result of an internal investigation.

Sterling's stock closed at $16.16 per share on May 24. Following the issuance of the May 24 press release, shares of SLFI fell by $6.19 (or 38.3%), closing at $9.97 per share on May 25, and wiping out millions of dollars in market capitalization. All of the Related Actions are based on the foregoing conduct.

## II.  Proposed Lead Plaintiffs.

On June 28, 2007, The Millers filed their complaint in the Eastern District of Pennsylvania.[2] As set forth in the certification that accompanied their complaint, at various points over the course of the class period, Movants purchased 594.74 shares of SLFI for a total of $11,724.47. All of Movants' purchases of Sterling stock were made on the open market. The Millers did not have any access to any non-publicly available information regarding the company, and purchased the stock based upon the integrity of the price set by the market. The Millers did not sell any of their shares of Sterling stock during the class period.

---

[2] On June 28, Movants filed a motion and supporting brief with the Judicial Panel on Multidistrict Litigation ("JPML") requesting that the Related Actions, as well as four (4) similar actions pending in the Eastern District of Pennsylvania, be transferred to that court for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *In re Sterling Financial Corp. Sec. Litig.*, MDL No. 1879.

ARGUMENT

I.  **The Actions Should be Consolidated Because They Share Similar Questions of Law and Fact.**

Consolidation of the four (4) Related Actions pending in this Court would avoid duplicative and unnecessary cost and delay.  Pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, "[w]hen actions involving a common question of law or fact are pending before the court…it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay."  FED. R. CIV. P. 42(a).  *See also, Quick v. Frontier Airlines,* No. 06-cv-01054, 2006 U.S. Dist. LEXIS 87779, *2 (D.Colo. Dec. 5, 2006) (noting that "consolidation is undertaken to promote efficiency and to avoid unnecessary costs or delay"); *Sage Prods., Inc. v. Devon Indus., Inc.,* 148 F.R.D. 213, 215 (N.D.Ill. 1993) (citing the "enhanced efficiency of jointly handling the numerous, complex issues involved in these cases" and ordering consolidation "for purposes of resolving pretrial matters because duplication of effort will be avoided as will the delay and expense of proceeding with separate depositions and separate motion schedules.").[3]  Courts frequently consolidate similar cases in complex

---

[3] The fact that these cases are subject to pending proceedings before the JPML in no way restricts this Court's ability to consolidate the Related Actions pursuant to FED. R. CIV. P. 42(a).  *See,* JPML Rule 1.5 ("The pendency of a motion, order to show cause, conditional transfer order or conditional remand order before the Panel concerning transfer or remand of an action pursuant to 28 U.S.C. §1407 does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court.").  Judge Cavanaugh recently issued an order consolidating seven (7) related cases that are pending in the District Court for the District of New Jersey, and which are also currently the subject of MDL proceedings.  *In re Railroad Antitrust Litig.,* MDL No. 1869.

securities fraud class actions such as the actions *sub judice*. *See, e.g., In re Olsten Corp. Sec. Litig.,* 3 F. Supp.2d 286, 292-93 (E.D.N.Y. 1998).

Each complaint filed in the Related Actions alleges substantially identical facts and asserts the same theories for recovery. The Related Actions also share several overlapping defendants. Were these cases to proceed independently, substantial effort, including motion practice, discovery, and trial, likely would be duplicated. Accordingly, the Related Actions should be consolidated in accordance with Rule 42(a).

## II.   Movants Should be Appointed Lead Plaintiffs in the Related Actions.

### a.   *The Procedure Mandated by the PSLRA For the Appointment of Lead Plaintiffs.*

The PSLRA sets forth the procedures governing the appointment of Lead Plaintiffs in class actions arising under the Exchange Act. *See* 15 U.S.C. § 78u-4(a)(1). Under the first step, a plaintiff who files a putative class action must publish a notice advising members of the purported plaintiff class of the pendency of the action, the claims asserted therein, the purported class period, and the option of any member of the purported class to move to serve as lead plaintiff of the purported class not later than 60 days after the date on which the notice is published. *See* 15 U.S.C. § 78u-4(a)(3)(A).

Under the PSLRA, the Court is then required to appoint as lead plaintiff the "most adequate plaintiff," which is defined as "the member or members of the purported plaintiff class that the Court determines to be most capable of adequately representing the interests of class members." *See* 15

U.S.C. § 78u-4(a)(3)(B)(i). *See also, In re Cendant Corp. Litig.*, 264 F.3d 201, 261-269 (3d Cir. 2001) (providing guidance on the analysis that district courts should employ in the lead plaintiff selection process under the PSLRA). The PSLRA further provides:

> …the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this subchapter is the person or group of persons that
>
> (aa)    has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
> (bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).[4] *See also, Pirelli Armstrong Tire Corp. v. LaBranche & Co.*, 229 F.R.D. 395, 4 19-20 (S.D.N.Y.2004); *Laborers Local 1298 Pension Fund v. Campbell Soup Co.,* No. 00 Civ. 152, 2000 WL 486956, at *3 (D.N.J. Apr.24, 2000). As set forth below, Movants are the "most adequate plaintiffs."

---

[4] The PSLRA provides that the:
>   Presumption [that the claimant with the largest interest should be appointed lead plaintiff] may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—
>     (aa) will not fairly and adequately protect the interests of the class; or
>     (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

- 7 -

      b.    *Movants Satisfy the Lead Plaintiff Requirements of the PSLRA.*

           i.    <u>The Notice Requirements Have Been Satisfied.</u>

On May 30, 2007, counsel for Movants published a notice that advised Sterling's stockholders of (i) the pendency of a securities class action against defendants, (ii) the claims asserted, (iii) the purported Class in that litigation, and (iv) the right of any member of the purported Class to move the Court to serve as lead plaintiff within the sixty-day period. A true and correct copy of the notice issued by Chimicles & Tikellis LLP is attached as Exhibit A. The Rosen Law Firm, P.A. published a similar notice on May 25 that alerted investors that an action had been filed in this Court. Accordingly, the notice requirements set forth in 15 U.S.C. §78u-4(a)(3)(A)(i)(I) and (II) have been satisfied. *See e.g., Pirelli Armstrong Tire Corp.,* 229 F.R.D. at 4 19-20; *Laborers Local 1298 Pension Fund,* No. 00 Civ. 152, 2000 WL 486956, at *3; *In re Oxford Health Plans, Inc. Sec. Litig.,* 182 F.R.D. at 45-46.

           ii.    <u>Movants Have the Largest Financial Interest Among Claimants that Have Filed a Motion to Be Appointed Lead Plaintiff.</u>[5]

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff is the person or group of persons that…has the

---

[5] Notwithstanding the PSLRA's requirement that a class action complaint asserting claims under the Exchange Act be accompanied by a sworn certification that sets forth, *inter alia*, the named plaintiff's transactions in the subject securities during the class period, *see* 15 U.S.C. § 77u-1(a)(2), many of the complaints that were filed in this Court were apparently not accompanied by such a certification (or at least none that were available from the dockets on the Pacer system). Accordingly, Movant is unaware of the relative size of many of the plaintiffs that have filed complaints in this Court.

largest financial interest in the relief sought by the class..." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). At the time of the filing of the instant motion, no other plaintiffs have filed a motion seeking to be appointed as Lead Plaintiff. Therefore, Movants currently have the largest financial interest among claimants that have filed a motion seeking to be appointed Lead Plaintiff.

        iii.    <u>Movants Have Satisfied the Other Requirements of the PSLRA.</u>

Movants have satisfied each of the other requirements of the PSLRA. First, Movants have signed a Certification under penalty of perjury, which:

(i)     states that Movants have reviewed the Complaint and authorizes the filing of the instant papers on their behalf;

(ii)     states that Movants did not purchase their shares of Sterling stock at the direction of plaintiff's counsel or in order to participate in any private action arising under the federal securities laws;

(iii)     states that Movants are willing to serve as representative parties on behalf of a Class, and are willing to provide testimony at deposition and trial, if necessary;

(iv)     sets forth all of Movants' transactions in SLFI common stock during the Class Period;

(v)     identifies any other action or action filed within the past three years in which Movants have sought to act as representative parties on behalf of a class in any private federal securities action; and

(vi)     states that Movants will not accept any payment for serving as representative parties on behalf of the Class beyond their pro rata share of any recovery.

*See* 15 U.S.C. § 78u-4(a)(2)(A).

Second, Movants have also satisfied the PSLRA by moving for appointment as Lead Plaintiff within sixty (60) days after the date on which the Notice was published. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

Third, Movants satisfy the applicable requirements of Rule 23 of the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). *See also, In re Cendant Corp. Sec. Litig.*, 264 F.3d at 262 ("Once the court has identified the movant with 'the largest financial interest in the relief sought by the class,' it should then turn to the question whether that movant 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure,' and is thus the presumptively most adequate plaintiff."). Rule 23(a) is satisfied for the purposes of the Lead Plaintiff proceedings where (i) the claims of the proposed lead plaintiff are typical of the claims of the class and (ii) the proposed lead plaintiff will fairly and adequately protect the interests of the class.[6] *See e.g., In re Cendant Corp. Sec. Litig.*, 264 F.3d at 263; *Pirelli Armstrong Tire Corp.,* 229 F.R.D. at 419-20; *In re Oxford Health Plans, Inc. Sec. Litig.,* 182 F.R.D. at 45-46.

      a.    *Movants Satisfy the Typicality Requirement.*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical to the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). "[T]ypicality entails an inquiry whether 'the named

---

[6] Although there are two (2) other requirements under FED. R. CIV. P. 23(a) - numerosity and commonality - "[t]ypicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Cendant Corp. Litig.,* 264 F.3d at 263-264.

plaintiff's individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.'" *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985) (citations omitted); *See also, In re Cendant Corp. Litig.,* 264 F.3d 201, 265 (3d Cir. 2001) (same). In other words, "the theories of the named plaintiffs must not be in conflict with those of the putative members." *In re Ikon Office Solutions, Inc.,* 194 F.R.D. 166, 176 (E.D.Pa. 2000) (citations omitted). Courts have found an absence of typicality "where the legal theories of the named plaintiffs potentially conflict with those of the absentees." *Georgine v. Amchem Prod., Inc.,* 83 F.3d 610, 631 (3d Cir. 1996), *aff'd sub nom. Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997). Likewise, "[a] proposed class representative is neither typical nor adequate if the representative is subject to a unique defense that is likely to become a major focus of the litigation." *Beck v. Maximus, Inc.*, 457 F.3d 291, 301 (3d Cir. 2006).

In this action, Movants' claims are clearly typical of those claims belonging to members of the class. Movants have been harmed by defendants' allegedly false and misleading statements, as all class members were. Movants are not subject to any unique defenses because they acquired their shares in Sterling on the open market and did not have or rely upon any non-public information in purchasing their shares. Further, Movants' interests are clearly aligned with those of the members of the class, and there

is no evidence of any antagonism between their interests and those of the class. An examination of the pleadings filed in these actions and the purchase data submitted by Movants demonstrates that their claims are typical of the claims of the class within the meaning of Rule 23(a)(3).

    b.  *Movants Satisfy the Adequacy Requirement.*

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). "In assessing whether the movant satisfies Rule 23's adequacy requirement, courts should consider whether it 'has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class." *In re Cendant Corp. Litig.*, 264 F.3d at 265 (citations omitted).

Movants have the ability and incentive to represent the interests of the class, as Movants suffered substantial losses as a result of the fraud at issue in this case, and have undertaken efforts to secure competent counsel to ensure that these claims are vigorously prosecuted. There is no conflict between the claims raised by Movants and those asserted on behalf of the class, as Movants are asserting claims for defendants' violations of the Exchange Act which are identical to the claims asserted on the class' behalf. Movants are therefore adequate representatives of the class for purposes of Rule 23(a)(4).

### III.  The Court Should Approve Movants' Choice of Counsel.

The PSLRA expressly provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court should not disturb a proposed lead plaintiff's choice unless "necessary to protect the interests of the plaintiff class." *See* Statement of Managers --"The Private Securities Litigation Reform Act of 1995," 141 Cong. Rec. H13691-08, at H13700 (daily edition Nov. 28, 1995).

Pursuant to Section 21D(a)(3)(B)(v) of the Exchange Act, a movant shall, subject to the approval of the Court, select and retain lead counsel to represent the class.  Movants have selected and retained Chimicles & Tikellis LLP as their counsel in this case. A biography of this firm and its personnel has been submitted as Exhibit B.

Chimicles & Tikellis LLP has significant relevant experience prosecuting securities class actions on behalf of defrauded investors: Chimicles & Tikellis LLP, as Lead Trial Counsel in *In Re Rea/Estate Associates Limited Partnerships Litig.*, No. CV 98-7035 DDP (C.D. Cal.), generated a $185 million jury verdict (a top 10 verdict in the U.S. in 2002) in a landmark case that was the first securities law class action in the U.S. tried to a jury following the enactment of the PSLRA.

Most recently, Chimicles & Tikellis LLP served as Lead Litigation Counsel representing a class of stockholders who invested in CNL Hotels &

- 13 -

Resorts, Inc., the nation's largest hotel real estate investment trust based in Orlando, Florida, in a class action case against CNL and various of its affiliates, concerning alleged violations of federal securities laws and state common law. *CNL Hotels &Resorts, Inc.,* CaseNo. 6:04-cv-1231-Orl-31KRS (U.S.D.C. M.D. Fla.) ("CNL Action"). CNL had raised over $3 billion from investors pursuant to alleged false and misleading offering materials ("Purchaser Claims"), and then, in June 2004, announced an affiliated-transaction that was set to cost the investors and the Company over $300 million ("Merger Claims"). On August 1, 2006, the Court approved the Settlement of the CNL Action: CNL Hotels had entered into a Revised Merger Agreement which significantly reduced the amount that it paid to acquire its affiliated Advisor, from $300 million to approximately $100 million, and the Purchaser Claims were settled for $35,000,000. In approving the settlement of the CNL Action, the court noted that "counsel pursued this complex case diligently, competently and professionally" and "achieved a successful result."

Chimicles & Tikellis LLP has evidenced their experience and efficiency by filing and serving a detailed complaint.  Chimicles & Tikellis LLP has also initiated the proceedings before the JPML by filing a motion on behalf of Movants to transfer the Related Actions to the Eastern District of Pennsylvania for coordinated or consolidated pretrial proceedings. *See* n.2, *supra.* Movants and members of the class will receive excellent legal

representation, and will be assured that class counsel will efficiently and aggressively pursue this matter. Likewise, the Court may be assured that the members of the Class will receive the highest caliber of legal representation by appointing Chimicles & Tikellis LLP as Lead Counsel in these proceedings. Accordingly, the Court should approve Chimicles & Tikellis LLP as Movants' choice of Lead Counsel.

## CONCLUSION

For the foregoing reasons, Movants respectfully request that this Court consolidate the above- captioned actions; appoint Movants as Lead Plaintiffs; and approve Movants' selection of Lead Counsel.

DATED: July 24, 2007

        Respectfully submitted,

        */s/ Ronen Sarraf*
SARRAF GENTILE LLP
Ronen Sarraf (RS-7694)
485 Seventh Avenue, Suite 1005
New York, NY 10018
T 212.868.3610
F 212.918.7967


CHIMICLES & TIKELLIS LLP
Nicholas E. Chimicles
Michael D. Gottsch
Benjamin F. Johns
361 West Lancaster Avenue
Haverford, PA 19041
Tel:   610-642-8500
Fax:   610-649-3633

*Attorneys for Plaintiffs*