# EXHIBIT B

# Our Attorneys-Of Counsel



# Denise Davis Schwartzman

Of Counsel, is admitted to practice in Pennsylvania, Florida, Texas and the District of Columbia. She is admitted to practice before all the State Courts in these jurisdictions and is admitted to the United States Courts of Appeals for the Third, Fifth, Eleventh and District of Columbia Circuits as well as United States District Courts within each Circuit. Ms. Schwartzman is a graduate of The Law School of the University of Pennsylvania (L.L.B. 1969) and Temple University (A.B. 1966). She holds a Master of Laws in Taxation from the Villanova University Law School. Ms. Schwartzman has practiced extensively at the trial and appellate levels before Federal and State Courts and before various administrative agencies.

Ms. Schwartzman was appellate counsel on the brief in *In re Charter Company*, 876 F.2d 866 (11th Cir. 1989), a case which established that class proofs of claim are allowable in bankruptcy proceedings, served on the trial team in *Ashland Oil Spill Litigation*, Master file M-14670 (W.D. Pa), *In re Sunrise Securities Litigation*, MDL No. 685 (E.D.Pa.) and represented our firm on the Litigation Committee in *Prudential Securities Incorporated Limited Partnership Litigation*, MDL 1005 (S.D.N.Y.). Ms. Schwartzman represented the Firm on the plaintiffs' co-lead counsel committee in *Spitzer v. Abdelhak*, No. 98-CV-6475 (E.D.Pa.), a civil RICO action which recovered damages on behalf of the physicians and research scientists of the now defunct Allegheny Health Education and Research Foundation (AHERF), a major health care provider in the Delaware Valley and is a senior member of the trial team for the Firm in *In re Mutual Funds Investment Litigation*, MDL 1586, a complex coordinated derivative action alleging violations of the Investment Company Act and the Investment Advisers Act by the investment advisers to eighteen mutual fund families. Prior to relocating to Philadelphia, she was associated with a major law firm in San Antonio, Texas.

## Our Attorneys-Of Counsel



# Anthony Allen Geyelin

Of Counsel, is admitted to practice before the United States District Court for the Eastern District of Pennsylvania and the Supreme Court of Pennsylvania.

Mr. Geyelin is a graduate of the University of Virginia (B.A. in English, 1968) and the Villanova University School of Law (J.D. 1974 *cum laude*), where he was a member of the Moot Court Board, an Associate Editor of the *Villanova Law Review*, and a recipient of the Obert Corporate Law Award. After graduation from law school Mr. Geyelin was an associate in the business department of a major Philadelphia law firm before accepting an appointment as Chief Counsel to the Pennsylvania Insurance Department in Harrisburg, an office he held from 1981 through 1983. Mr. Geyelin served as Pennsylvania's Acting Insurance Commissioner in 1983 and 1984. In 1985 Mr. Geyelin accepted the position as chief inside counsel for Academy Insurance Group, Inc. in Valley Forge, Pennsylvania and Atlanta, Georgia, serving as General Counsel and Secretary of the publicly traded holding company and its operating subsidiaries. In 1994 Mr. Geyelin was appointed Secretary and General Counsel of Penn-America Insurance Company in Hatboro, Pennsylvania, and in 1995 assumed the same offices with Penn-America Group, Inc., the publicly traded parent company. From 1997 until joining the Firm Mr. Geyelin was in private practice, concentrating on general business, insurance regulatory and litigation support matters.

# Our Attorneys-Of Counsel



# Candice L.H. Hegedus

Of Counsel, is admitted to practice before the Supreme Court of Pennsylvania, the United States District Court for the Eastern District of Pennsylvania, and the United States Court of Appeals for the Third Circuit. She is a graduate of Villanova University School of Law (J.D. 1979) and Muhlenberg College (B.A. 1974 *cum laude*). Prior to joining the Firm, she practiced with major Philadelphia litigation firms. The focus of her practice is complex litigation, including securities fraud and limited partnership cases behalf of shareholders and antitrust matters. Ms. Hegedus was a member of the team who litigated *In re Real Estate Associates Limited Partnership Litigation*, No. CV-98-7035 (Federal District Court, Los Angeles), a case brought for violation of federal securities laws. Following a six-week trial in November 2002, the jury returned a $185 million plaintiffs' verdict, the first verdict awarding substantial monetary damages since the passage of the Private Securities Litigation Act of 1995.

## Our Attorneys-Associates



# Fatema E.F. Burkey

an associate in the Haverford office, is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey. She graduated from Washington University School of Law (J.D. 2003) and received her undergraduate degree in French and English from Georgetown University (B.S. 1998 *cum laude*). While in law school, Ms. Burkey served as Associate Editor of the *Washington University Law Quarterly* and authored, *Prosecutor v. Aleksovski: A Critical Analysis of the ICTY Appeals Chamber's Abandonment of Witness Protection Measures*, 82 Wash. U. L.Q. 297-318 (2004).



# Benjamin F. Johns

an associate in the Haverford office, is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey. His entire practice is devoted to litigation, with an emphasis on antitrust, securities, and consumer fraud class actions. Mr. Johns has presented oral argument before the Judicial Panel on Multidistrict Litigation. In re Long-Distance Telephone Service Federal Excise Tax Refund Litig., 2006 WL 3848729 (J.P.M.L. 2006). He is also actively involved in the In re Insurance Brokerage Antitrust Litigation (MDL 1663), which involves allegations of bid rigging and steering against numerous insurance brokers and insurers. The District Court for the District of New Jersey recently granted final approval to a settlement with an insurer defendant which provides a benefit to the plaintiffs and class members valued at over $121 million.

Mr. Johns is a graduate of the Penn State Dickinson School of Law (J.D. 2005), and the Penn State Harrisburg School of Business Administration (M.B.A. 2004, Beta Gamma Sigma). While attending law school, he was a member of the Woolsack Honor Society and Irving R. Kaufman Securities Moot Court Team. Prior to law school, Mr. Johns attended Washington and Lee University (B.S. 2002, cum laude), where he played college basketball and spent a semester studying abroad in Osaka, Japan. Outside of the office, Mr. Johns volunteers as an advisor to a high school mock trial team, and coaches in the Narberth Basketball League. He is a member of the Philadelphia Bar Association and the American Association for Justice.

## Our Attorneys-Associates



### Kimberly Litman Kimmel

an associate in the Haverford office, is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey. She is a graduate of the Temple University Beasley School of Law (J.D. 2003) and received her undergraduate degree in Psychology from the University of Maryland at College Park (B.A. 2000). While in law school, she served as Executive Editor of the *Temple Political & Civil Rights Law Review* and as a law clerk to Senior District Judge Kenneth L. Ryskamp of the United States District Court for the Southern District of Florida. Ms. Kimmel's pro bono activities include serving as a volunteer attorney with the Philadelphia Volunteers for the Indigent Program, a non-profit organization that provides legal services to low-income clients who reside in Philadelphia or have legal problems in Philadelphia.



### Timothy N. Mathews

an associate in the Haverford office, is a graduate of Rutgers School of Law-Camden (J.D. *magna cum laude* 2003) and Rutgers University-Camden (B.A. *summa cum laude* 2000). While attending law school, Mr. Mathews was a Teaching Assistant for the Legal Research and Writing Program and received the 1L Legal Writing Award. He was also Lead Marketing Editor of the Rutgers Journal of Law & Religion and one of the top 10 oralists in the 2003 Judge John R. Brown Admiralty Moot Court competition.

Mr. Mathews' practice includes the representation of investors in complex antitrust, securities, and shareholder derivative litigation. He is an active member of the Firm's litigation team in *In re Mutual Funds Investment Litigation* (MDL 04-1586), a multidistrict litigation alleging claims related to late trading and market timing of mutual funds in eighteen mutual fund families and involving hundreds of parties. Mr. Mathews also directs the Summer Associate program for the Haverford office and coordinates the fall hiring process for the firm.

Mr. Mathews is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey, the United States District Courts for the Eastern District of Pennsylvania and the District of New Jersey, and the United States Court of Appeals for the Ninth Circuit.

**Our Attorneys-Associates**

*Timothy N. Matthews, cont.*

Mr. Mathews has an active role in the following actions:

*McWilliams v. Long Beach, Granados v. County of Los Angeles, Granados v. City of Los Angeles*, Superior Court of California for the County of Los Angeles. In these consolidated cases, Plaintiffs challenge the imposition of a utility users tax imposed by local government entities on certain telephone services which are excluded from taxation under the federal telephone excise tax. Plaintiffs seek a refund of the taxes on behalf of a class of taxpayers, as well as injunctive and declaratory relief.

*Volitis v. Blue Cross*, Eastern District of Pennsylvania. This pending ERISA action challenges the methodology applied by Blue Cross to calculate plan participants' coinsurance payments. Plaintiff alleges that Blue Cross requires participants to pay more than the designated coinsurance percentage by ignoring discounts Blue Cross receives from hospitals and other facility providers when calculating participants' coinsurance responsibilities.

*In re Live Concert Antirust*, MDL 1745. Plaintiffs in this multidistrict litigation allege that Clear Channel and its affiliates monopolized and attempted to monopolize the markets for live concerts and concert tickets by, inter alia, leveraging their position in radio markets to coerce performers to use their concert promotion services.

*Title Insurance Cases*, Eastern District of Pennsylvania. In these cases plaintiffs allege that Title Insurers and their agents overcharged homeowners for title insurance policies by failing to give refinance and reiusse rate discounts as required.

*International Fibercom Insurance Actions*, District of Arizona. These related cases involve an insurance coverage dispute and bad faith claims arising out of a securities lawsuit which the firm previously litigated to a final judgment.

*In re Mutual Funds Investment Litigation – Derivative Actions,* MDL 1586. These actions allege violations of the Investment Company Act based upon market timing and late trading in sixteen mutual fund families.

## Our Attorneys-Associates



## Mary Katherine Meermans

an associate in the Haverford office, graduated *cum laude* from the Law School of University of Pennsylvania in 1982. She served as a law clerk to the Honorable Paul M. Chalfin, Philadelphia Court of Common Pleas, from September 1982 to January 1984, and to the Honorable Phyllis W. Beck from January 1984 to October 1984. She is a member of the Pennsylvania Bar.



## A. Zachary Naylor

an associate in the Wilmington office, is a graduate of the Widener University School of Law (J.D., 2003 *magna cum laude*), the University of Delaware (B.A. in Economics and Political Science, 2000) and Salesianum School. While at Widener, he served as Wolcott Law Clerk to the Honorable Joseph T. Walsh of the Supreme Court of Delaware. He was also a Managing Editor of the *Delaware Journal of Corporate Law*, meriting the Russell R. Levin Memorial Award for outstanding service and dedication to that publication. Mr. Naylor is admitted to practice before the Supreme Court of Delaware, the United States District Court for the District of Delaware and the United States Court of Appeals for the Third Circuit.

Together with the Firm's Partners, Mr. Naylor has assisted in the prosecution of numerous shareholder and unitholder class and derivative actions arising pursuant to Delaware law, including;

- *In re Freeport McMoRan Sulphur Inc. Shareholder Litigation*, C.A. No. 16729-NC (Del. Ch.) This Action challenged the fairness of the terms and process of a 1998 merger between Freeport-McMoRan Sulphur Inc. and McMoRan Oil & Gas, Co. *See e.g.* 2005 WL 1653923 (Del. Ch. June 30, 2005) and 2005 WL 225040 (Del. Ch. Jan. 26, 2005). A settlement providing for a $17.5 million fund for the Class was approved by the Court of Chancery on April 20, 2006.

**Our Attorneys-Associates**

A. Zachary Naylor, cont.

- *IG Holdings, Inc. et.al. v. Hallwood Realty, LLC*, C.A. No. 20283-NC (Del. Ch.) This Action challenged the response of a Partnership's general partner to a tender offer and the eventual allocation of merger consideration between the general partner and limited partners. Ultimately, as a result of the litigation, the limited partners received a premium price for their units, protected by a floor.

- *Saito, et.al. v. McCall, et.al.*, C.A. No. 17132-NC (Del. Ch.) This Action involved derivative litigation on behalf of McKesson HBOC arising from alleged oversight violations by certain board members. The Court approved a settlement including a $30 million fund for the Company's behalf, mechanisms to protect the independent prosecution of certain realigned claims, and other corporate governance benefits. The settlement represents a historically large achievement for cases of this type and was characterized by the Court of Chancery as "strikingly good" particularly in light of the "onerous path" presented by Delaware law for derivative Plaintiffs.

- *In re Chiron Shareholder Deal Litigation*, Consol. Case No. RG05-230567 (Cal). & *In re Chiron Corporation Shareholder Litigation*, C.A. No. 1602-N (Del. Ch.) These Actions sought to enjoin the proposed acquisition of shares of Chiron Corporation not already held by its 42% stockholder, Novartis AG. The Actions also sought to invalidate certain contractual provisions that effectively prevent Chiron board members from effectively discharging their unremitting fiduciary duties in accordance with Delaware law. Following briefing on a motion for preliminary injunction, a settlement was reached pursuant to which Novartis increased the offered merger consideration by $330 million.

- *Gelfman et.al. v. Weeden Investors, L.P., et.al., C.A. No. 18519 (Del. Ch.)* This Action alleged that the corporate general partner (and its board of directors) of a limited partnership violated contractual and fiduciary duties owed to limited partners. Following a trial on the merits, Plaintiffs prevailed on a substantial portion of their claims resulting in a judgment in favor of Plaintiffs. *See e.g.* 859 A.2d 89 (Del. 2004).

## Our Attorneys-Associates

# Joseph G. Sauder



an associate in the Haverford office, has concentrated his practice on prosecuting class action litigation, including securities fraud, shareholder derivative actions, consumer protection, ERISA and antitrust cases on behalf of shareholders, consumers and institutional clients. Prior to joining the firm, Mr. Sauder was an associate with a major Philadelphia firm where he concentrated on complex civil litigation. From 1998 to 2003, Mr. Sauder was a prosecutor in the Philadelphia District Attorney's Office where he served as lead counsel in hundreds of criminal trials including over twenty jury trials involving major felonies.

Mr. Sauder received his Bachelor of Science, *magna cum laude* in Finance from Temple University in 1995. He graduated from Temple University School of Law in 1998, where he was a member of *Temple Law Review*.

Mr. Sauder's public service activities include teaching trial advocacy to a local Philadelphia high school team which competed in the State Mock Trial Competition. He is vice president of the Philadelphia District Attorneys' Alumni Association. His *pro bono* activities include serving as a volunteer attorney with the Support Center for Child Advocates, a nonprofit organization that provides legal and social services to abused and neglected children.

Mr. Sauder is a member of the Firm's Client Development Group and works closely with the Firm's institutional clients. He is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey, the United States Court of Appeals for the Third Circuit, the United States District Courts for the Eastern District of Pennsylvania, the Middle District of Pennsylvania and the District of New Jersey.

Together with the Firm's Partners, Mr. Sauder has assisted or is assisting in the prosecution of the following actions:

- *Charles v. Pepco Holdings Inc*, No. 05-702 (D.Del) This pending ERISA class action lawsuit filed in September 2005 on behalf of a Class consisting of employees who may suffer significantly reduced future benefit accruals as a result of the company converting their pension rights to the Cash Balance Sub-Plan of the Conectiv Retirement Plan.

## Our Attorneys-Associates

*Joseph G. Sauder cont.*

- *In re Textainer Financial Services Corporation, et al.*, Superior Court of California, County of San Francisco. This pending securities class action filed in 2005 arises out of proxy solicitations that were made to holders of limited partnership units issued by the Textainer Partnerships, a California Limited Partnership. The Complaint alleges that the defendants breached their fiduciary duties by approving a sale of the assets that provided the Limited Partners with inadequate consideration and by disseminating a misleading Proxy on which the Limited Partners were asked to cast their vote on the sale. In early 2006 the court denied the defendants' demurrer and certified the class.

- *DeBenedictis v. Merrill Lynch & Co., Inc.*, No. 04-404 (D. N.J.) This pending class action challenges the sufficiency of Merrill Lynch's prospectus disclosures for Class B shares in its proprietary mutual funds.

- *In Re: Canadian Import Antitrust Litigation*, No. 04-2724 (D. Minn.) This pending antitrust class action is based on allegations that nine pharmaceutical companies have conspired to prevent U.S. consumers from buying prescription drugs from Canada, creating high drug prices in the United States. The case is currently on appeal in the Eighth Circuit.

- *Cook v. Rockwell International and the Dow Chemical Company*, No. 90-cv-00181 (D. Co.) Mr. Sauder assisted with the trial of this environmental case involving the Rocky Flats Nuclear Weapons Plant. The case sought property damages (compensatory and punitive) for a class of approximately 15,000 persons owning parcels downwind of Rocky Flats, which is located about 16 miles northwest of downtown Denver, Colorado. In February 2006 a jury returned a verdict of $554 million on behalf the Class. It includes an award of $200 million in punitive damages.

- *Saito v. McCall*, No. Civ. A. 17132-NC (Del. Ch.) This derivative action is based on allegations that the officers, directors and advisors of two companies, McKesson and HBOC Inc. were aware of material accounting improprieties at HBOC Inc. previous to a merger of McKesson and HBOC Inc. On February 21, 2006, the Court of Chancery approved a settlement in which the Individual Defendants' insurers will pay $30 million to the Company.

- *In re DVI Securities Litigation*, No. 2:03-CV-5336 (E.D. Pa.) This pending securities class action was brought on behalf of purchasers of DVI Securities. Plaintiffs' allege that DVI's financial reports violated generally accepted accounting principles by engaging in various deceptive schemes.

Mr. Sauder also assists in the prosecution of actions involving health and welfare issues, including actions to recover excessive charges due to fraud and other misconduct by health service providers, and antitrust claims to recover excessive prescription drug charges and other costs due to corporate collusion and misconduct.

**Our Attorneys-Associates**



# Daniel B. Scott

an associate in the Haverford office, is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey, the United States Court of Appeals for the Third and Sixth Circuits and the United States District Courts for the District of New Jersey, Eastern District of Pennsylvania and Eastern District of Michigan. He is a graduate of Emory University School of Law (J.D. 2001, Atlanta Law Fellow) and Pennsylvania State University (B.S. Economics 1991, *with Distinction*, University Scholar). Upon graduation from law school, Mr. Scott was inducted into the Order of Barristers and Order of Emory Advocates, in recognition of his work as a participant and coach on the Emory Law School Philip C. Jessup International Law Moot Court team (1999-2001).

His practice includes the representation of companies, investors and consumers in complex antitrust, securities and consumer protection litigation. In *In re Pennsylvania Baycol Third Party Payor Litigation* (Phila. Ct. Common Pleas), a class action for which Chimicles & Tikellis served as co-lead counsel, Mr. Scott was instrumental in helping obtain partial summary judgment on liability; this was the first judgment to be entered against Bayer in the United States in connection with the withdrawal of Baycol. Mr. Scott also materially assisted in briefing a motion for class certification in that case, resulting in the certification of one of the few national class actions involving third party payors to be certified in a state court. Shortly before trial, the firm reached a settlement with Bayer in which Bayer agreed to pay class members a net recovery that approximates their maximum damages. In *Wong v. T-Mobile USA, Inc.* (E.D. Mich. 2006), a class action for which Chimicles & Tikellis serves as co-lead counsel, Mr. Scott was instrumental in briefing opposition to T-Mobile's motion to compel arbitration. In July 2006, the Court issued an opinion denying T-Mobile's motion, having concluding that the class action waiver contained therein was unenforceable. Mr. Scott's *pro bono* commitments include an effort to obtain asylum for a Colombian bacteriologist who was kidnapped, assaulted and threatened with death by the FARC rebels of Colombia. In this case, Mr. Scott argued and won remand from the Court of Appeals for the Third Circuit on a denial of asylum by the Department of Homeland Security. *Rojas-Contreras v. Att'y Gen'l*, No. 04-4762, 2006 WL 2052233 (3d Cir. July 24, 2006).

In September 2006, American Lawyer Media, publisher of *The Legal Intelligencer* and the *Pennsylvania Law Weekly*, named Mr. Scott as one of forty-five "Lawyers on the Fast Track" – Pennsylvania attorneys under the age of 40 who show outstanding promise in the legal profession and make a significant commitment to their community. Selection for this award is done by an independent ALM committee comprised of members of the bar.

## Our Attorneys-Associates



# Scott M. Tucker

an associate in the Wilmington Office, is admitted to practice before the Supreme Court of Delaware and the U.S. District Court for the District of Delaware. He is a graduate of the Syracuse University College of Law (J.D. 2006, *cum laude*), the Whitman School of Management at Syracuse University (M.B.A. 2006), and SUNY Cortland (B.S. 2002, *cum laude*). While attending law school, Mr. Tucker was a member of the Securities Arbitration Clinic.

# Practice Areas

### Health & Welfare Fund Assets
*C&T Protects Clients' Health & Welfare Fund Assets Through Monitoring Services & Vigorously Pursuing Health & Welfare Litigation.*

At no cost to the client, C&T seeks to protect its clients' health & welfare fund assets against fraud and other wrongdoing by monitoring the health & welfare fund's drug purchases, Pharmacy benefit Managers and other health service providers. In addition, C&T investigates potential claims and, on a fully-contingent basis, pursues legal action for the client on meritorious claims involving the clients' heath & welfare funds. These claims could include: the recovery of excessive charges due to misconduct by health service providers; antitrust claims to recover excessive prescription drug charges and other costs due to corporate collusion and misconduct; and, cost-recovery claims where welfare funds have paid for health care treatment resulting from defective or dangerous drugs or medical devices.

### Monitoring Financial Investments
*C&T Protects Clients' Financial Investments Through Securities Fraud Monitoring Services.*

Backed by extensive experience, knowledge of the law and successes in this field, C&T utilizes various information systems and resources (including forensic accountants, financial analysts, seasoned investigators, as well as technology and data collection specialists, who can cut to the core of complex financial and commercial documents and transactions) to provide our institutional clients with a means to actively protect the assets in their equity portfolios. As part of this no-cost service, for each equity portfolio, C&T monitors relevant financial and market data, pricing, trading, news and the portfolio's losses. C&T investigates and evaluates potential securities fraud claims and, after full consultation with the client and at the client's direction, C&T will, on a fully-contingent basis, pursue legal action for the client on meritorious securities fraud claims.

### Corporate Transactional
*C&T Protects Shareholders' Interest by Holding Directors Accountable for Breaches of Fiduciary Duties*

Directors and officers of corporations are obligated by law to exercise good faith, loyalty, due care and complete candor in managing the business of the corporation. Their duty of loyalty to the corporation and its shareholders requires that they act in the best interests of the corporation at all times. Directors who breach any of these "fiduciary" duties are accountable to the stockholders and to the corporation itself for the harm caused by the breach. A substantial part of the practice of Chimicles & Tikellis LLP involves representing shareholders in bringing suits for breach of fiduciary duty by corporate directors.

# Practice Areas

### Securities Fraud
*C&T Protects and Recovers Clients' Assets Through the Vigorous Pursuit of Securities Fraud Litigation.*

C&T has been responsible for recovering over $1 billion for institutional and individual investors who have been victims of securities fraud. The prosecution of securities fraud often involves allegations that a publicly traded corporation and its affiliates and/or agents disseminated materially false and misleading statements to investors about the company's financial condition, thereby artificially inflating the price of that stock. Often, once the truth is revealed, those who invested at a time when the company's stock was artificially inflated incur a significant drop in the value of their stock. C&T's securities practice group comprises seasoned attorneys with extensive trial experience who have successfully litigated cases against some of the nation's largest corporations. This group is strengthened by its use of forensic accountants, financial analysts, and seasoned investigators.

### Antitrust
*C&T Enforces Clients' Rights Against Those Who Violated Antitrust Laws.*

C&T successfully prosecutes an array of anticompetitive conduct, including price fixing, tying agreements, illegal boycotts and monopolization. As counsel in major litigation over anticompetitive conduct by the makers of brand-name prescription drugs, C&T has helped clients recover significant amounts of price overcharges for blockbuster drugs such as BuSpar, Coumadin, Cardizem, Relafen, and Paxil.

### Real Estate Investment Trusts
*C&T is a Trail Blazer in Protecting Clients' Investments in Non-Listed Equities.*

C&T represents limited partners and purchaser of stock in limited partnerships and real estate investment trusts (non-listed REITs) which are publicly-registered but not traded on a national stock exchange. These entities operate outside the realm of a public market that responds to market conditions and analysts' scrutiny, so the investors must rely entirely on the accuracy and completeness of the financial and other disclosures provided by the company about its business, its finances, and the value of its securities. C&T prosecutes: (a) securities law violations in the sale of the units or stock; (b) abusive management practices including self-dealing transactions and the payment of excessive fees; (c) unfair transactions involving sales of the entities' assets; and (d) buy-outs of the investors' interests.

# Practice Areas

### Shareholder Derivative Lawsuits
*C&T is a Leading Advocate for Prosecuting and Protecting Shareholder Rights through Derivative Lawsuits and Class Actions.*

C&T is at the forefront of persuading courts to recognize that actions taken by directors (or other fiduciaries) of corporations or associations must be in the best interests of the shareholders. Such persons have duties to the investors (and the corporation) to act in good faith and with loyalty, due care and complete candor. Where there is an indication that a director's actions are influenced by self-interest or considerations other than what is best for the shareholders, the director lacks the independence required of a fiduciary and, as a consequence, that director's decisions cannot be honored. A landmark decision by the Supreme Court of Delaware underscored the sanctity of this principal and represented a major victory for C&T's clients.

### Corporate Governance and Accountability
*C&T is a Principal Advocate for Sound Corporate Governance and Accountability.*

C&T supports the critical role its investor clients serve as shareholders of publicly held companies. Settlements do not provide exclusively monetary benefits to our clients. In certain instances, they may include long term reforms by a corporate entity for the purpose of advancing the interests of the shareholders and protecting them from future wrongdoing by corporate officers and directors. On behalf of our clients, we take corporate directors' obligations seriously. It's a matter of justice. That's why C&T strives not to only obtain maximum financial recoveries, but also to effect fundamental changes in the way companies operate so that wrongdoing will not reoccur.

# Representative Cases

***CNL Hotels & Resorts Inc. Securities Litigation***, Case No. 6:04-CV-1231(M.D. FL).

C&T is Lead Litigation Counsel in CNL Hotels & Resorts Inc. Securities Litigation, representing a Michigan Retirement System, other named plaintiffs and over 100,000 investors in this federal securities law class action that was filed in August 2004 against the nation's second largest hotel real estate investment trust, CNL Hotels, and certain of its affiliates, officers and directors. CNL raised over $3 billion from investors pursuant to what Plaintiffs alleged to be false and misleading offering materials. In addition, in June 2004 CNL proposed an affiliated-transaction that was set to cost the investors and the Company over $300 million ("Merger").

On August 1, 2006, the Federal District Court located in Orlando, Florida granted final approval of the Settlement as fair, reasonable, and adequate, and in rendering its approval of an award of attorneys' fees and costs to Plaintiffs' Counsel, the Court noted that "Plaintiffs' counsel pursued this complex case diligently, competently and professionally" and "achieved a successful result." More than 100,000 class members received notice of the proposed settlement and no substantive objection to the settlement, plan of allocation or fee petition was voiced by any class member.

The Settlement resolves federal securities law and state law claims that were filed against CNL Hotels & Resorts, Inc. (f/k/a CNL Hospitality Properties, Inc.)("CNL Hotels") and other individual and entity defendants ("Settling Defendants") in August, 2004. The Action was filed on behalf of: (a) CNL Hotels shareholders entitled to vote on the proposals presented in CNL Hotels' proxy statement dated June 21, 2004 ("Proxy Class"); and (b) CNL Hotels' shareholders who acquired CNL Hotels shares pursuant to or by means of CNL Hotels' public offerings, registration statements and/or prospectuses between August 16, 2001 and August 16, 2004 ("Purchaser Class").

The Proxy Class claims were settled by (a) CNL Hotels having entered into an Amended Merger Agreement which significantly reduced the amount that CNL Hotels paid to acquire its Advisor, CNL Hospitality Corp., compared to the Original Merger Agreement approved by CNL Hotels' stockholders pursuant to the June 2004 Proxy; (b) CNL Hotels having entered into certain Advisor Fee Reduction Agreements, which significantly reduced certain historic, current, and future advisory fees that CNL Hotels paid its Advisor before the Merger; and (c) the adoption of certain corporate governance provisions by CNL Hotels' Board of Directors. In approving the Settlement, the Court concluded that in settling the Proxy claims, "a substantial benefit [was] achieved (estimated at approximately

## Representative Cases

**$225,000,000)" and "this lawsuit was clearly instrumental in achieving that result."** The Purchaser Class claims were settled by Settling Defendants' payment of **$35,000,000**, payable in three annual installments (January 2007 to January 2009).

This is an excellent result in a litigation that presented extremely difficult and complex issues. The Settlement achieves outstanding benefits for CNL Hotels' investors and, importantly, the Company is now well-positioned to pursue its business plan

*In Re Chiron Shareholder Deal Litigation*, **Case No. RG05-230567 (Cal. Super.) &** *In re Chiron Corporation Shareholder Litigation*, **C.A. No. 1602-N (Del. Ch.).**
C&T represents stockholders of Chiron Corporation in an action which challenged the proposed acquisition of Chiron Corporation by its 42% stockholder, Novartis AG. Novartis announced a $40 per share merger proposal on September 1, 2005, which was rejected by Chiron on September 5, 2005. On October 31, Chiron announced an agreement to merge with Novartis at a price of $45 per share. C&T was co-lead counsel in the consolidated action brought in the Delaware Court of Chancery. Other similar actions were brought by other Chiron shareholders in the Superior Court of California, Alameda City. The claims in the Delaware and California actions were prosecuted jointly in the Superior Court of California. C&T, together with the other counsel for the stockholders, obtained an order from the California Court granting expedited proceedings in connection with a motion preliminary to enjoin the proposed merger. Following extensive expedited discovery in March and April, 2006, and briefing on the stockholders' motion for injunctive relief, and just days prior to the scheduled hearing on the motion for injunctive relief, C&T, together with Co-lead counsel in the California actions, negotiated an agreement to settle the claims which included, among other things, a further increase in the merger price to $48 per share, or an additional $330 million for the public stockholders of Chiron. On July 25, 2006, the Superior Court of California, Alameda County, granted final approval to the settlement of the litigation.

*Rojas-Contreras v. Att'y Gen'l*, **No. 04-4762, 2006 WL 2052233 (3d Cir. July 24, 2006).**
In this pro bono matter, one of C&T's Associates represented a Colombian bacteriologist who was kidnapped, assaulted and threatened with death by the FARC rebels of Colombia, who thereafter sought asylum in the United States. The Department of Homeland Security denied asylum to the bacteriologist, and C&T represented her in the appeal of that denial. Subsequent to an oral argument before the Court of Appeals for the Third Circuit, C&T won remand on the denial of asylum.

## Representative Cases

***In Re: Pennsylvania Baycol: Third-Party Payor Litigation***, Case No. 001874, Court of Common Pleas, Philadelphia County.
In connection with the withdrawal by Bayer of its anti-cholesterol drug Baycol, C&T represents various Health and Welfare Funds, including the Pennsylvania Employees Benefit Trust Fund, and a certified national class of "third party payors" seeking damages for the sums paid to purchase Baycol for their members/insureds and to pay for the costs of switching their members/insureds from Baycol to an another cholesterol-lowering drug. The Philadelphia Court of Common Pleas granted plaintiffs' motion for summary judgment as to liability; this is the first and only judgment that has been entered against Bayer anywhere in the United States in connection with the withdrawal of Baycol. The Court subsequently certified a national class, and the parties reached a settlement (recently approved by the court) in which Bayer agreed to pay class members a net recovery that approximates the maximum damages (including pre-judgment interest) suffered by class members. The class settlement negotiated by C&T represents a net recovery for third party payors that is between double and triple the net recovery pursuant to a non-litigated settlement negotiated by lawyers representing third party payors such as AETNA and CIGNA that was made available to and accepted by numerous other third party payors (including the TRS). C&T had advised its clients to reject that offer and remain in the now settled class action. On June 15, 2006 the court granted final approval of the settlement.

***In re Freeport-McMoran Sulphur, Inc. Shareholder Litigation***, C.A. No. 16729 (Del. Ch.).
In this shareholder class action, C&T serves as Lead Plaintiffs' Counsel representing investors in a stock-for-stock merger of two widely held public companies, seeking to remedy the inadequate consideration the stockholders of Sulphur received as part of the merger. In June 2005, the Court of Chancery denied defendants' motions for summary judgment, allowing Plaintiffs to try each and every breach of fiduciary duty claim asserted in the Action. In denying defendants' motions for summary judgment the Court held there were material issues of fact regarding certain board member's control over the Board including the Special Committee members and the fairness of the process employed by the Special Committee implicating the duty of entire fairness and raising issues regarding the validity of the Board action authorizing the merger. The decision has broken new ground in the field of corporate litigation in Delaware. Before the trial commenced, Plaintiffs and Defendants agreed in principle to settle the case. The settlement, which was approved in April 2006, provides for a cash fund of $17,500,000.

## Representative Cases

*In re McKesson Derivative Litigation, Saito, et. al.  v. McCall, et. al.,* **C.A. No. 17132 (Del. Ch.).**
As Lead Counsel in this stockholder derivative action, C&T challenged the actions of the officers, directors and advisors of McKesson and HBOC in proceeding with the merger of the two companies when their managements were allegedly aware of material accounting improprieties at HBOC.  In addition, C&T also brought (under Section 220 of the Delaware Code) a books and records case to discover information about the underlying events. C&T successfully argued in the Delaware Courts for the production of the company's books and records which were used in the preparation of an amended derivative complaint in the derivative case against McKesson and its directors. Seminal opinions have issued from both the Delaware Supreme Court and Chancery Court about Section 220 actions and derivative suits as a result of this lawsuit. Plaintiffs agreed to a settlement of the derivative litigation subject to approval by the Delaware Court of Chancery, pursuant to which the Individual Defendants' insurers will pay $30,000,000 to the Company. In addition, a claims committee comprised of independent directors has been established to prosecute certain of Plaintiffs' claims that will not be released in connection with the proposed settlement. Further, the Company will maintain important governance provisions among other things ensuring the independence of the Board of Directors from management. On February 21, 2006, the Court of Chancery approved the Settlement and signed the Final Judgment and Order and Realignment Order.

*Shared Medical Systems 1998 Incentive Compensation Plan Litigation,* **Philadelphia County Court of Common Pleas, Commerce Program, No. 0885.**
Chimicles & Tikellis LLP is lead counsel in this action brought in 2003 in the Philadelphia County Court of Common Pleas. The case was brought on behalf of approximately 1,300 persons who were employees of Defendant Siemens Medical Solutions Health Services Corporation (formerly Shared Medical Systems, Inc.) who had their 1998 incentive compensation plan ("ICP") compensation reduced 30% even though the employees had completed their performance under the 1998 ICP contracts and had earned their incentive compensation based on the targets, goals and quotas in the ICPs.   The Court had scheduled trial to begin on February 4, 2005. On the eve of trial, the Court granted Plaintiffs' motion for summary judgment as to liability on their breach of contract claim.  With the rendering of that summary judgment opinion on liability in favor of Plantiffs, the parties reached a settlement in which class members will receive a **net recovery of the full amount of the amount that their 1998 ICP compensation was reduced.** On May 5, 2005, the Court approved the settlement, stating that the case "should restore anyone's faith in class actions as a reasonable way of proceeding on reasonable cases."

*Representative Cases*

***Gelfman v. Weeden Investors, L.P.,*** Civ. Action No. 18519-NC (Delaware Chancery Court).
Chimicles & Tikellis LLP served as class counsel, along with other plaintiffs' firms, in this action against the Weeden Partnership, its General Partner and various individual defendants filed in the Court of Chancery in the State of Delaware. In this Class Action, Plaintiffs alleged that Defendants breached their fiduciary duties to the investors and breached the Partnership Agreement. The Delaware Chancery Court conducted a trial in this action which was concluded in December 2003. Following the trial, the Chancery Court received extensive briefing from the parties and heard oral argument. On June 14, 2004, the Chancery Court issued a memorandum opinion, which was subsequently modified, finding that the Defendants breached their fiduciary duties and the terms of the Partnership Agreement, with respect to the investors, and that Defendants acted in bad faith ("Opinion"). This Opinion from the Chancery Court directed an award of damages to the classes of investors, in addition to other relief. In July 2004, Class Counsel determined that it was in the best interests of the investors to settle the Action for over 90% of the value of the monetary award under the Opinion (over $8 million).

***McParland v. Keystone Health Plan Central,*** Case No. 98-SU-00770-01 (Pennsylvania Court of Common Pleas, York County).
Chimicles & Tikellis LLP served as lead counsel in this class action, filed in 1998 in the Court of Common Pleas of York County on behalf of persons who enrolled in Keystone's medicare HMO "SeniorBlue" program based on Keystone's aggressive marketing of prescription coverage, low premiums, and its affiliation with Blue Cross and Blue Shield. The suit asserted claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Law and for breach of contract. In July 2004, the Court approved the settlement of this Action providing some class members with case and others with discounts on prescription drugs.

***I.G. Holdings Inc., et. al. v. Hallwood Realty, LLC,*** et. al., C.A. No. 20283 (Del. Ch.).
In the Delaware Court of Chancery, C&T represented the public unitholders of Hallwood Realty L.P. The action challenged the general partner's refusal to redeem the Partnership's rights plan or to sell the Partnership to maximize value for the public unitholders. Prior to the filing of the action, the Partnership paid no distributions and Units of the Partnership normally traded in the range of $65 to $85 per unit. The prosecution of the action by C&T caused the sale of the Partnership, ultimately yielding approximately $137 per Unit for the unitholders plus payment of the attorneys' fees of the Class.

## Representative Cases

***ML-Lee Litigation, ML Lee Acquisition Fund L.P.* and *ML-Lee Acqui-
sition Fund II L.P.* and *ML-Lee Acquisition Fund (Retirement Ac-
counts)*, (C.A. Nos. 92-60, 93-494, 94-422, and 95-724), Delaware Fed-
eral District Court.**
C&T represented three classes of investors who purchased units in two investment
companies, ML-Lee Funds (that were jointly created by Merrill Lynch and Thomas
H. Lee). The suits alleged breaches of the federal securities laws, based on the omis-
sion of material information and the inclusion of material misrepresentations in the
written materials provided to the investors, as well as breaches of fiduciary duty
and common law by the general partners in regard to conduct that benefited them
at the expense of the limited partners. The complaint included claims under the of-
ten-ignored Investment Company Act of 1940, and the case witnessed numerous
opinions that are considered seminal under the ICA. The six-year litigation re-
sulted in **$32 million** in cash and other benefits to the investors.

***In re Real Estate Associates Limited Partnership Litigation*, Case
No. CV 98-7035, United States District Court, Central District of
California.**
Chimicles & Tikellis LLP achieved national recognition for obtaining, in a federal
securities fraud action, the first successful plaintiffs' verdict under the PSLRA. Sen-
ior partner Nicholas E. Chimicles was Lead Trial Counsel in the six-week jury trial
in federal court in Los Angeles, in October 2002. The jury verdict, in the amount of
$185 million (half in compensatory damages; half in punitive damages), was ranked
among the top 10 verdicts in the nation for 2002. After the court reduced the puni-
tive damage award because it exceeded California statutory limits, the case settled
for $83 million, representing full recovery for the losses of the class. At the final
hearing, held in November 2003, the Court praised Counsel for achieving both a
verdict and a settlement that "qualif[ied] as an exceptional result" in what the
Judge regarded as "a very difficult case..." In addition, the Judge noted the case's
"novelty and complexity...and the positive reaction of the class. Certainly, there
have been no objections, and I think Plaintiffs' counsel has served the class very
well."

*Case Summary:* In August of 1998, over 17,000 investors ("Investor Class") in 8
public Real Estate Associates Limited Partnerships ("REAL Partnerships") were
solicited by their corporate managing general partner, defendant National Partner-
ship Investments Corp. ("NAPICO"), and other Defendants via Consent Solicitations
filed with the Securities and Exchange Commission ("SEC"), to vote in favor of the
sale of the REAL Partnerships' interests in 98 limited partnerships ("Local Partner-
ships"). In a self-dealing and interested transaction, the Investor Class was asked
to consent to the sale of these interests to NAPICO's affiliates ("REIT Transaction").
In short, Plaintiffs alleged that defendants structured and carried out this wrongful
and self-dealing transaction based on false and misleading statements, and omis-
sions in the Consent Solicitations, resulting in the Investor Class receiving grossly

## Representative Cases

inadequate consideration for the sale of these interests. Plaintiffs' expert valued these interests to be worth a minimum of $86,523,500 (which does not include additional consideration owed to the Investor Class), for which the Investor Class was paid only $20,023,859.

Plaintiffs and the Certified Class asserted claims under Section 14 of the Securities Exchange Act of 1934 ("the Exchange Act"), alleging that the defendants caused the Consent Solicitations to contain false or misleading statements of material fact and omissions of material fact that made the statements false or misleading. In addition, Plaintiffs asserted that Defendants breached their fiduciary duties by using their positions of trust and authority for personal gain at the expense of the Limited Partners. Moreover, Plaintiffs sought equitable relief for the Limited Partners including, among other things, an injunction under Section 14 of the Exchange Act for violation of the "anti-bundling rules" of the SEC, a declaratory judgment decreeing that defendants were not entitled to indemnification from the REAL Partnerships.

*Trial:* This landmark case is the <u>first</u> Section 14 – proxy law- securities class action seeking damages, a significant monetary recovery, for investors that has been tried, and ultimately won, before a jury anywhere in the United States since the enactment of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Trial began on October 8, 2002 before a federal court jury in Los Angeles. The jury heard testimony from over 25 witnesses, and trial counsel moved into evidence approximately 4,810 exhibits; out of those 4,810 exhibits, witnesses were questioned about, or referred to, approximately 180 exhibits.

On November 15, 2002, the ten-member jury, after more than four weeks of trial and six days of deliberation, unanimously found that Defendants knowingly violated the federal proxy laws and that NAPICO breached its fiduciary duties, and that such breach was committed with oppression, fraud and malice. The jury's unanimous verdict held defendants liable for compensatory damages of $92.5 million in favor of the Investor Class. On November 19, 2002, a second phase of the trial was held to determine the amount of punitive damages to be assessed against NAPICO. The jury returned a verdict of $92.5 million in punitive damages. In total, trial counsel secured a unanimous jury verdict of $185 million on behalf of the Investor Class.

With this victory, Mr. Chimicles and the trial team secured the 10th largest verdict of 2002. (See, National Law Journal, "The Largest Verdicts of 2002", February 2, 3003; National Law Journal, "Jury Room Rage", Feb. 3. 2002). Subsequent to post-trial briefing and rulings, in which the court reduced the punitive damage award because it exceeded California statutory
limits, the case settled for $83 million. The settlement represented full recovery for the losses of the class.

*Prosecuting and trying this Case required dedication, tenacity, and skill:*
This case involved an extremely complex transaction. As Lead Trial Counsel, C&T

# Representative Cases

was faced with having to comprehensively and in an understandable way present complex law, facts, evidence and testimony to the jury, without having them become lost (and thus, indifferent and inattentive) in a myriad of complex terms, concepts, facts and law. The trial evidence in this case originated almost exclusively from the documents and testimony of Defendants and their agents. As Lead Trial Counsel, C&T was able, through strategic cross-examination of expert witnesses, to effectively stonewall defendants' damage analysis. In addition, C&T conducted thoughtful and strategic examination of defendants' witnesses, using defendants' own documents to belie their testimony.

***The significance of the case:***  The significance of this trial and the result are magnified by the public justice served via this trial and the novelty of issues tried. This case involved a paradigm of corporate greed, and C&T sent a message to not only the Defendants in this Action, but to all corporate fiduciaries, officers, directors and partners, that it does not pay to steal, lie and cheat. There needs to be effective deterrents, so that "corporate greed" does not pay. The diligent and unrelenting prosecution and trial of this case by C&T sent that message.

Moreover, the issues involved were novel and invoked the application of developing case law that is not always uniformly applied by the federal circuit courts. In Count I, Plaintiffs alleged that defendants violated § 14 of the Exchange Act. Subsequent to the enactment of the PLSRA, the primary relief sought and accorded for violations of the proxy laws is a preliminary injunction. Here, the consummation of the REIT Transaction foreclosed that form of relief. Instead, Plaintiffs' Counsel sought significant monetary damages for the Investor Class on account of defendants' violations of the federal proxy laws. C&T prevailed in overcoming defendants' characterization of the measure of damages that the Investor Class was required to prove (defendants argued for a measure of damages equivalent to the difference in the value of the security prior to and subsequent to the dissemination of the Consent Solicitations), and instead, successfully recouped damages for the value of the interests and assets given up by the Investor Class.  The case is important in the area of enforcement of fiduciary duties in public partnerships which are a fertile ground for unscrupulous general partners to cheat the public investors.

Because of C&T's leadership and extensive advocacy skills, a complex case, requiring thousands of hours of attorney, expert, paralegal and support staff labor, which faced fierce opposition at each turn, was fully litigated and tried to a jury. Because of C&T, 17,000 investors had their day in court and were heard. C&T brought this Action before the revelations about the extensiveness of "corporate wrongdoing," and at the time this Action was filed, C&T already recognized the need for a clear message to be sent to corporations, and to the decision makers running those corporations, that wrongdoing will not be tolerated and will not pay.